# THE PENNSYLVANIA COMPANY

*v.*

## GEORGE HANKEY.

1. NEGLIGENCE—*when plaintiff's negligence precludes a recovery.* A brakeman in the employ of a railroad company received a serious personal injury in attempting to change a link attached to an engine, while it was in motion over an unballasted part of a side track, the ties being above the ground, whereby he caught his foot between one of the ties and the brake beam at the rear of the tender, the engine backing to attach to empty cars, and was thrown down and was run over so that he lost both his feet, and it appeared this occurred in broad daylight so that he must have seen the condition of the side track, and that he did not have the engine stop before going upon the track, as he might have done, and the proof failed to show that common prudence required the ballasting of such a side track, only used for standing cars: *Held,* the brakeman could not recover against the company for the injury, by reason of his own negligence.

2. SAME—*evidence.* In a suit by a brakeman to recover damages of a railroad company for a personal injury while in its employ, occasioned by a want of ballast in a part of a side track, upon which he went, the company offered to prove that it was not unusual for railroad companies to have in use unballasted side tracks, which the court refused to admit: *Held,* that the evidence was competent on the question of what vigilance was required in a brakeman under such circumstances.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. F. H. & F. S. WINSTON, and Mr. GEORGE WILLARD, for the appellant.

Messrs. BARGE, DENSLOW & DIXON, and Mr. H. L. SLAYTON, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an action brought by Hankey, appellee, against the Pennsylvania Company, appellant, to recover damages for an injury suffered by him, and alleged to have been caused by the negligence of appellant. That corporation was operating the Pittsburg, Ft. Wayne and Chicago Railroad.

Appellee was in the service of appellant as a brakeman on freight trains. At the time of the disaster appellee, as such brakeman, was preparing to couple an engine and tender to a train of empty cars then standing on a side track at or near Englewood. This side track consisted of ties and rails laid upon a graded or level bed, but without ballast,—the spaces between the ties not being filled with earth or gravel, and being about six inches deep. The engine and tender were backing on this side track, and plaintiff, while the same were in motion, tried to change the link at the rear of the tender. In making this attempt one of his feet was caught between one of the ties and the brake-beam at the rear of the tender, and he was thereby cast down in such position that the wheels of the tender passed over both his feet and so crushed them that it became necessary to amputate both his legs below the knees.

A trial by jury was had, resulting in a verdict for the plaintiff and the assessment of his damages at the sum of $10,000. A motion for a new trial was refused and judgment was rendered upon the verdict. This is an appeal from that judgment.

Appellant insists that there is no evidence of wrong on the part of its management,—that plaintiff was guilty of negligence and that the injury was the result of his own folly.

The only fault attributed to appellant consists in the failure to have this side track ballasted, and this upon the ground that (as it is insisted) ballasting was essential to the safety of its employees. It is urged that the spaces between the ties should be filled with earth so as to make a comparatively smooth track for them to walk upon in the discharge of their duties. This side track was built and used solely as a place for temporarily storing cars not in use. It was about two miles long, and lay west of and but a short distance from the main tracks and nearly parallel to them, and was connected with the more westerly of these main tracks by a switch at the south end of the side track. The main tracks

were well ballasted and smooth, and so was that part of the south end of the side track which was at the switch and near to it; but 'north of that there was no ballasting, and the spaces between the ties of the side track were wider apart than those of the main tracks, being irregular and from two feet to three feet wide. This disaster occurred some fifty to eighty feet north of the switch—probably about seventy feet—and at that point the track was without ballast. At that time the engine and tender were backing northward slowly, moving not more than three miles an hour.

The party of employees, of whom Hankey was one, consisted of a conductor, engineman, fireman and two brakemen. They came from Chicago for the purpose of taking a train of empty cars from this side track with an engine, tender and caboose—the conductor and brakemen riding in the caboose. Traveling south on the more westerly of the main tracks they passed the train of empty cars on the side track, and on approaching the switch the caboose was cut off and left on the main track about one hundred feet north of this switch. The engineman, the fireman and Woodworth (one of the brakemen) went on with the engine and tender, while the conductor and plaintiff got off the caboose and walked westward, the conductor to look after the numbers of the empty cars to be taken, and Hankey, the plaintiff, to put himself in readiness to couple the tender and the empty freight cars when the engine should be switched on to the side track and backed up to the south end of these empty cars.

It was Hankey, the plaintiff, who cut off the caboose from the tender before it reached the switch going south, and in so doing he took out the back pin, thus leaving the link attached to the tender. This link was a crooked or bent link, used in cases where the cars to be connected are not of the same height. It seems, by the testimony of plaintiff, that on leaving the caboose he went westward, and was about to cross the side track at a point about forty feet north of the switch, when he was told by the conductor (who at that time had

crossed the side track a little farther north) to change the link; and that plaintiff at once returned to the caboose and there got a straight link and again went westward, crossing the side track before the engine at that point. As the tender was backed up he stepped into the track and attempted to walk back on the track while changing the links. He had made but three or four steps when his foot was caught, as stated above, and he was rendered a cripple for life.

It is not shown affirmatively that common prudence demanded that a side track, used solely as a place for the temporary storing of cars, should be ballasted. It is shown that such a track is "not safe for brakemen to walk upon in coupling cars," etc., but it nowhere appears that it was the duty of brakemen to walk on the track while changing links or coupling cars on such a track. It is shown—and no testimony contradicts this, that the engine man in switching and coupling is under the direction of the brakeman who is to do the coupling; that the brakeman in such case may halt the engine when, in his discretion, it ought to be halted, or may, by signals, cause it to move slower or faster as he thinks proper. The witnesses for plaintiff show plainly that a side track without ballast is unsafe for a brakeman to walk upon in changing links or coupling cars. No rule of the company is offered requiring brakemen to walk on such a track under such circumstances. It is not claimed that plaintiff was ordered by the conductor to do so. Plaintiff testifies that the conductor told him to "change the link." This in no sense can be held to mean that he should do so when the engine and tender were in motion. At that moment the engine and tender must have been south of the switch. If, as plaintiff's witnesses testify, this side track was in such condition that it was unsafe to change the links when the tender was in motion on that track, plainly it was the duty of plaintiff to have halted the engine before trying to change the link; or to have postponed the attempt to make the change until the tender reached the empty cars and had there become still.

It is said, however, that plaintiff, not being acquainted with this side track, had a right to assume that it was ballasted, and therefore might properly change the links as he did, the proof showing that it is not unusual to change links when the cars are in motion.

There are some difficulties in the way of adopting this position. This disaster occurred in broad day light, and the plaintiff had walked to this track from the caboose, had seen the conductor cross it, and after going back to the caboose for the straight link, had returned and crossed it himself not more than twenty feet from the place of the accident, and hence the evidence does not tend to prove plaintiff in fact supposed that this track was ballasted. He was himself a witness, and does not undertake to say that he did not observe that this track was without ballast. Again, we have often decided that travelers, when about to cross or walk on a railroad track, are required by common prudence to look and see whether any train is approaching. It would seem that a brakeman about to change links when the train is in motion must be required by common prudence to look, if he can, and see what kind of track he is about to pass over. Again, he had surely no reason to assume or suppose that this side track was ballasted, unless by the custom of railroad companies such tracks were very generally, if not universally ballasted. In this case defendant offered to prove that it was not unusual for railroad companies to have in use unballasted side tracks, but at the instance of plaintiff the court refused to allow the proof to be given. This evidence was surely competent on the question as to what vigilance was required in a brakeman under such circumstances. If it be true that an unballasted track is unsafe for a brakeman to walk on for the purpose of changing links where the cars are in motion and moving towards him, and if it also be true that unballasted side tracks are not unusual, it must follow that ordinary prudence requires a brakeman, before undertaking to do that dangerous thing, to ascertain, if practicable, whether the track in question is or is

not ballasted; and if it be not ballasted, ordinary care plainly requires that before attempting to change the links he should cause the moving cars to halt, and wait until they are at rest, before venturing upon the undertaking.

In view of the proofs in this record, and the ruling of the court in refusing to permit the defendant to prove that it was not unusual for railroad companies to have in use side tracks without ballasting, we think the motion for a new trial ought to have been sustained, and for the error in refusing a new trial the judgment in this case must be reversed, and the cause remanded for a new trial.

*Judgment reversed.*