# Louisville & Nashville Railroad Co. v. Allen's Adm'r.

*Action for Damages against Railroad Corporation, by Administratrix of Workman killed by Explosion of Boiler.*

1. *Care and diligence required of railroad companies, in matter of machinery furnished to their employees.*—A railroad company is not required to warrant the perfection of its machinery or appliances, nor to insure its employees against injury from boiler explosions, or other like accidents. It is only bound to use due care and diligence—that is, the care and diligence which a man of ordinary prudence, engaged in a like business, would exercise for his own protection and the protection of his property—first to furnish a safe and suitable engine, and then to keep it in that condition.

2. *Negligence vel non, as question of law or fact.*—In cases of doubt, where the facts are disputed, or where different minds may reasonably draw different conclusions from the same undisputed facts—the question of negligence *vel non* is a question of fact for the determination of the jury; but, when the facts are undisputed, and the inference to be drawn from them is clear and certain, it is a question of law for the decision of the court.

3. *Latent defects in machinery; liability of employer for injuries to workman.*—For injuries suffered from the explosion of an engine, caused by a latent defect, which was not visible or capable of discovery by the closest inspection from within or without, and which was in fact not known to the railroad company or any of its servants, the railroad company is not liable to an action at the suit of a workman who is injured, unless it was guilty of negligence in failing to discover the defect.

4. *Same; negligence of fellow-workman.*—The injury having occurred prior to the passage of the act approved February 15th, 1885 (Sess. Acts 1884-5, p. 115), changing the rule as to the liability of the employer to one of his servants for injuries resulting from the negligence of other fellow-servants; the fact that a circumstance pointing to the defect was discovered, a few hours before the explosion, by other workmen, who failed to report it, would not render the company (or employer) liable.

5. *Burden of proof as to negligence.*—In an action against a railroad company by one of its employees or servants, to recover damages for injuries caused by the explosion of an engine, the *onus* of proving negligence is on the plaintiff, and it is not enough to prove the fact of injury from the explosion; but the rule is different when the action is brought by a passenger.

6. *New inventions for machinery; railroad company not bound to adopt.*—A railroad company is not required, by its duty to its employees and servants, to adopt every new invention or appliance which may be useful in its business, and which may serve to diminish the risks to life, limb or property incident to its service; it is sufficient to adopt such as are ordinarily used by prudently conducted roads, engaged in like business, and surrounded by like circumstances.

7. *Tests of boilers by steam and hydraulic pressure.*—The application of the steam test for boilers being shown to be neither practicable nor generally approved, on account of its danger; and the hydraulic test,

[Louisville & Nashville Railroad Co. v. Allen's Adm'r.]

as shown by the evidence, being extraordinary and rarely used, except when engines are first put in use, or fail to work well, or when they are overhauled periodically; the failure of the railroad company to have either or both of these tests applied to the defective boiler, does not authorize the imputation of negligence.

8. *Same.*—Nor can negligence be imputed to the railroad company, on account of the failure to apply the hydraulic test to the engine, when it was last overhauled at the shops, about ten months before the explosion, when the evidence shows that the defect had only existed from two to six months.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. John P. Hubbard.

This action was brought by Mrs. Flora A. Allen, as administratrix, to recover damages for the death of her husband, David M. Allen, alleged to have been caused by the negligence and wrongful act of the defendant corporation, its servants and agents; and was commenced on the 1st May, 1884. The plaintiff's intestate was, at the time of his death, in the employment of the defendant, in the capacity of car-inspector; and he was killed on the morning of December 2d, 1883, in the yard of the defendant, while engaged in the performance of his duties, by an explosion of the boiler of a steam-engine, which had just been taken into the yard. The complaint alleged that his death' "was caused by the wrong and negligence of the defendant in using and operating at said yard the said locomotive, which was out of order, unsafe, and unfit to be used in said business; all which was unknown to said David M. Allen, and which, but for the want of proper care and diligence, would and ought to have been known to said defendant." The cause was tried on issue joined on the plea of not guilty, and resulted, under the rulings of the court, in a verdict and judgment for the plaintiff, for $10,000.

"On the trial," as the bill of exceptions states, "it was shown that the defect in the boiler, which caused the explosion, was in the upper part of one of the boiler-sheets, where it overlaps, and was riveted upon another boiler-sheet in the construction of the boiler. This flaw, or crack, was between the two plates where they overlap, and on the inside of the upper and outer plate, so that it could not be seen or detected by the closest inspection from within or without, even when the flues were taken out and the outside of the boiler stripped of the jacket and lagging. All the witnesses who were examined on this point testified that the defect could not have been ascertained by hammering on the boiler, or from the sound of the hammering; that the outer and inner sheets of the boiler were in apparently good condition. Some of the witnesses gave it as their opinion, that proper hydraulic tests would have discovered the flaw, or weak place in the boiler; while others

testified, that the use of the cold-water test caused the iron in the boiler to contract, and, if there was sediment, it might get in the flaw, and the weak place might be held by the strength of the outer iron; while, if steam were applied, it would expand the iron, and, perhaps, would discover the flaw by steam coming through. It was shown, also, that when this test was used, if there was a defect, there was danger of an explosion and injury to those making the test; while, if the hydraulic test was used, the water would ooze through the flaw, without any danger of explosion."

It was shown that the engine was built by the *Rogers Locomotive Works*, could carry 140 lbs. of steam, and had been in use for ten or eleven years; that it drew a train of twenty or more freight cars from Birmingham to Montgomery the day before the accident, sometimes carrying 140 lbs. of steam during the trip; that it had been sent into the company's shops at Louisville, for repairs, in December, 1882, and came out of the shops in February, 1883, having been overhauled and repaired. *R. Wells*, the defendant's superintendent of machinery at Louisville, who was examined as a witness for the defendant, testified that " the engine was then sent in to put in a new cylinder and fire-box; that he saw her when she came in, and when she was turned out, and the engine and boiler were then in good condition, so far as he could see, but he himself made no test to ascertain if there was any defect in the boiler;" also, " that it was usual, and it was the defendant's instructions, to test the boilers of the engines whenever they were brought in for any general overhauling or repairs." The bill of exceptions purports to set out all the evidence, and states that " there was no evidence that the defendant, or the defendant's servants, had any actual knowledge of the flaw, or of any defect in the boiler." *George Allen*, an engineer in the defendant's employment, who was examined as a witness for the plaintiff, testified that, while he was taking the engine from the depot over to the yard, on the morning of the accident, " he saw what he thought was a little smoke near the sand-box, but paid little attention to it, as he thought the jacket had been on fire, and the bucket, which he noticed on his seat in the cab, had been used in putting it out; that after going into the telegraph office, to get orders, he walked back to the engine, and noticed a little leak; that he then called the engineer of the train which was to follow him, as he thought it could be fixed with little trouble;" and after describing the explosion, by which Allen was killed and the witness was injured, he further testified: " Witness had never noticed any flaw or defect in the boiler, and had never reported any defect in it, as it was his duty to do, if he had noticed any such thing.

He noticed the steam-guage just before the explosion, and saw that the engine had on about 125 or 126 lbs. of steam: she had on plenty of water, and the engine was working all right in every respect apparently." One *Hicks*, "a night-hostler in the defendant's shops, whose business it was to look after the engines when they came in at night, report any defects he saw, see that the engines were properly watered and fired up, and take them to the depot for the engineer when ready to go out," was examined as a witness for the defendant, and testified that, when the engine came in, the evening before the explosion, "he took her to the shops, cleaned out the fire, and gave her the usual attention; that he started out with said engine and several others, at an early hour the next morning, filled their tanks with water, and left her at the depot a little after five o'clock; that he then discovered what he thought was smoke coming out of the side of the engine, near the dome, or sand-box, and, thinking it was the jacket (or lagging) on fire, poured ten or twelve buckets of water on it, when it ceased; that it was nothing unusual for the jacket (or lagging) to be on fire, and it was customary to pour water on it; that it was not regarded as a sign of any defect or danger; that he considered it a very small matter, and did not report it." One *Cox*, the fireman of the engine, who carried it over from the depot to the yard, was also examined as a witness by the defendant, and testified, "that he noticed a little steam escaping, which he thought was smoke from the lagging; that this was not at all unusual, and in such cases water is poured on to put it out; that the steam continued to escape on the way over to the yard, but got no worse until just before the explosion; that he had seen no leaks, or evidence of defects in the boiler, prior to this escape of steam, and had never reported it as unfit; that he was on the engine, and busy, at the time of the explosion, and paid no particular attention to the escape of steam." This was all the testimony in reference to the flaw or defect in the boiler, except that several experts, who examined the boiler after the explosion, expressed the opinion that the defect had existed from two to six months; and several witnesses were examined by each party as to the different tests of the strength of engines, the effect of each, and the frequency with which such tests were or ought to be applied.

The court gave the following (with other) charges to the jury, at the instance of the plaintiff: (1.) "If the jury find, from the evidence, that the boiler was unsafe and unsound at and before the explosion; and that the defendant, by the use of proper care and skill, could have ascertained its unsound condition, and failed and neglected to use such care and skill; and that the death of plaintiff's intestate resulted from an ex-

32

plosion, caused by a flaw or defect in the boiler; then the defendant would be liable in this action." (2.) "That whether such flaw or defect in the boiler could have been discovered, before the explosion, by the use of proper care and skill, and whether there was negligence in the defendant, whereby the death of plaintiff's intestate was caused, are questions for the jury; and if the jury find that the death of said intestate was caused by the negligence of the defendant, then the amount of damages is left to the jury, taking into consideration all the facts in evidence." (3.) "If the jury believe, from the evidence, that the defendant knew of the defect in the boiler, which caused the explosion, and hence the death of plaintiff's intestate; or, if the jury believe, from the evidence, that such defect could have been discovered by the defendant, by the use of ordinary diligence and care, then the plaintiff is entitled to recover." (4.) "A railroad company is bound to use ordinary care and diligence—the same care and diligence that a prudent man uses in his own business—in the selection of safe and roadworthy engines, and is bound to use the same care to keep said engines in good and safe condition, and is bound to use approved and well-known tests to determine as to the safety of engines; and a failure to use such care and diligence is evidence of negligence on the part of the company."

The defendant excepted to each of these charges as given, and requested several charges in writing, among which were the following: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "The burden of proving negligence is on the plaintiff; and unless there is some testimony other than the explosion of the engine, or the failure to discover the flaw in the boiler-plate, to prove that defendant had not skilled and proper servants to inspect and repair said engine, the jury are bound to find that defendant had such skilled and proper servants; and if defendant had such skilled and proper servants to repair and inspect said engine, under the evidence in this case, it had discharged its whole duty to plaintiff's intestate." (3.) "Under the issues in this case, the only charge of negligence attributable to defendant is the failure to discover the flaw in the boiler-plate; and if the defendant had skillful and competent mechanics, who inspected and repaired said engine, then the failure to discover such flaw can not render the defendant liable." (4.) "Under the evidence in this case, if the jury believe it, the fact that steam or smoke was seen issuing from the jacket on the side of the engine, when the hostler brought it to the depot in the morning, whether he reported the same or not, was not sufficient to charge the defendant with negligence in not then examining the engine; especially in view of the facts, if the jury believe them to ex-

ist, that the escape was supposed to be smoke from fire in the jacket coming in contact with the boiler, and that the same ceased when water was poured on it." (5.) "If proper tests were used to ascertain the defect in the boiler, when the engine was overhauled at Louisville, about February, 1883, and there was nothing afterwards occurring to indicate that it was unsafe, the defendant was not bound to apply extraordinary tests for determining its safety." (6.) "Under the evidence in this case, the defendant did not owe to plaintiff's intestate the duty of subjecting the engine to hydraulic pressure, to test the strength and safety of the boiler." The court refused each of these charges, and the defendant excepted to their refusal.

The charges given, and the refusal of the charges asked, with other rulings, are now assigned as error.

JONES & FALKNER, for appellant.—The former decisions of this court have established these propositions : that the master (or employer) does not owe to his servant an absolute duty, in the first instance, to furnish a safe and suitable engine, nor, having furnished such engine at first, to keep it safe ; that his only duty is to use due care and dilligence to procure safe and suitable instrumentalities, and due care and diligence to keep them in safe condition ; that the happening of an accident to a servant is not, of itself, evidence of negligence, and does not shift the burden of proof ; that the master-mechanic, or others charged with the duty of inspecting or repairing an engine, are the fellow-servants of those whose duties bring them about the engine ; and that if the railroad company has exercised due care and diligence in appointing and retaining such mechanics, it is not responsible to a servant for their failure to repair, or to discover latent defects.—*M. & O. Railroad Co. v. Thomas*, 42 Ala. 724; *Smoot v. M. & M. Railway Co.*, 67 Ala. 18; *Smith v. M. & M. Railway Co.*, 59 Ala. 245 ; *Bull v. M & M. Railway Co.*, 67 Ala. 208. See, also, Pierce on Railroads, 370-71 ; Cooley on Torts, 557 ; *Smith v. Railway Co.*, 46 Mich. 264; 53 Illinois, 336; *Warner v. Erie Railroad Co.*, 39 N. Y. 470; 31 Indiana, 174; *Slater v. Jewett*, 5 Amer. & Eng. R. R. Cases, 516; Wood's Master & Servant, 800, § 419. That a railroad company does not insure the safety of its servants against accidents, and is not required to adopt the newest mechanical inventions, for which greater safety is claimed than the appliances generally in use, see Beach on Contributory Negligence, § 126 ; *Lake Shore R. R. Co. v. McCormick*, 74 Indiana, 440; *McGinnis v. Southern Bridge Co.*, 8 Amer. & Eng. R. R. Cases, 135. That the failure to apply the steam or hydraulic test to the engine was not negligence, see *DeGraff v. N. Y. Central Railroad*, 76 N. Y. 130; *Cagney v. Han*

*nibal & St. J. Railroad*, 69 Miss. 416; *DeForest v. Jewett*, 19 Hun, N. Y. 509; *Fort Wayne Railroad Co. v. Gildersleeve*, 33 Mich. 133; *Smith v. Railroad Co.*, 42 Wisc. 520; 94 Illinois, 474.

WATTS & SON, *contra.*—The plaintiff made out a *prima facie* case, when she proved—1st, that her intestate was killed by an explosion of the boiler; 2d, that the boiler was defective; 3d, that the defendant had, or ought to have had, knowledge or notice of the defect; and, 4th, that the intestate did not know of the defect, and had not equal means of knowing with the employer. There was evidence of negligence in the failure to have the boiler properly tested, as the rules of the company required, and as common prudence suggested; and the question of negligence was properly submitted to the jury. The master is bound to furnish machinery and appliances as safe and free from latent defects as ordinary care and prudence can provide; and this care must be commensurate with the risks incident to the service, and must be continued so long as the machinery or appliances are used. The fact that the defect might have been discovered, by proper examination and care on the part of the employer, is sufficient evidence of negligence to charge him with liability; and he can not screen himself from liability on the ground that he did not know of the defect, if by ordinary care he would have known it: he is bound to know.—Wood's Railway Law, vol. 3, pp. 375-6; *Hayden v. Smithfield*, 29 Conn. 548; *Plank v. Railroad Co.*, 60 N. Y. 607. It is not enough that the employer appoints proper inspectors: he must see that they discharge the duty of inspecting, and is responsible for their failure or negligence. *Brothers v. Carter*, 52 Mo. 373; *Harper v. Ind. Railroad Co.*, 73 Ind. 261; *Gunter v. Grantville Man. Co.*, 18 So. Ca. 262; *Fuller v. Jewett*, 80 N. J. 46; *Hough v. Railroad Co.*, 100 U. S. 213; *Brann v. Chicago Cailroad Co.*, 53 Iowa, 595; *Dunklin v. Sharp*, 88 N. Y. 225; Cooley on Torts, 561; Shearm. & Redf. Negl. §§ 102–04, and notes.

SOMERVILLE, J.—The intestate of the plaintiff was accidentally killed, in December, 1883, by the explosion of the boiler of a steam-engine, he being at the time in the employment of the defendant railroad company; and this action is brought to recover damages of the company, for its alleged negligence, as the proximate cause of the injury.

The whole controversy is, in our judgment, reduced to one single issue—that of negligence *vel non* on the part of the railroad company.

[Louisville & Nashville Railroad Co. v. Allen's Adm'r.]

The defect in the boiler, which was the cause of the explosion, was a latent or secret one, not visible or capable of discovery by the closest inspection from within or without—being a flaw or crack in the upper part of one of the boiler-sheets, between two plates where they overlapped. Neither the removal of the flues, nor the stripping of the outside of the boiler of the jacket and lagging, would have discovered it. Nor could it have been discovered by hammering on the boiler, or from the sound of the hammering. It is shown that both the outer and inner sheets of the boiler were in apparently good condition. The existence of the defect was, for these reasons, unknown in fact to the defendant, or any of its servants or employees.

It is insisted, however, that the railroad company was guilty of negligence in failing to keep the engine in proper repair, or, rather, in failing to discover the flaw or defect, which was the cause of the explosion, and upon the discovery of which the duty to repair would depend; that there was evidence tending to prove this negligence, and that the question was one for the determination of the jury.

There was no absolute duty resting on the railroad to furnish a safe engine to be used in its service. It was not required to warrant the perfection of its machinery or appliances, or to insure its employees from injury from boiler explosions, or other like accidents. Its duty to employees was only to use due care and diligence—first, to furnish a suitable and safe engine; and then, like care and diligence to keep it in that condition. And by 'due care and diligence' we mean "the care and diligence which a man of ordinary prudence, engaged in a like business, would exercise for his own protection, and the protection of his property"—a care which must be reasonably commensurate with the nature and hazards attending the particular business. *Mobile & Ohio R. R. Co. v. Thomas*, 42 Ala. 672, 713; *Smoot v. M. & M. R. R. Co.*, 67 Ala. 18; Pierce on Railroads, 370–373.

In this case, there neither can be, nor is any negligence imputed, in failing to furnish a good and safe engine originally. This is shown to have been done. The negligence charged is in failing to keep the engine in a safe condition. This charge can be sustained only by showing that there was negligence in failing to discover the defect in the boiler, which is supposed to have existed not longer than from two to six months previous to the date of the explosion.

The question is, then, resolved into the inquiry, did the defendant use due care and diligence to discover the latent flaw or crack in the boiler which was the cause of the accident?

The question of negligence is one of fact for the determination of the jury, in cases of doubt, either where the facts are disputed, or where different minds may reasonably draw different inferences or conclusions. It is a question of law, however, to be decided by the court, where the facts are undisputed, and the inference to be drawn from them is clear and certain.—*City Council of Montgomery v. Wright*, 72 Ala. 411. The court will, accordingly, give a general charge on the evidence, when requested, where the evidence bearing on the question of negligence *vel non* is such as that the court would feel authorized to sustain a demurrer to it.—*Smoot v. M. & M. Railway Co.*, 67 Ala. 15.

The evidence contained in the bill of exceptions tends to show but two grounds upon which it can be claimed, with any show of reason, that the defendant was negligent. The first is the fact, that three of the employees of the defendant—the engineer who carried the engine over to the yard, the night hostler whose business it was to look after engines when they came in at night, and the fireman on the engine—had each, a few hours before the explosion, noticed a small leak near the sand-box, from which there escaped a small amount of steam, which was supposed to be smoke coming out of the side of the engine near the dome, or sand-box. It was no unusual thing for smoke to thus emanate from the lagging or jacket of the engine, and in such cases it could be stopped by pouring a few buckets of water upon it; which, in this case, Hicks, the night hostler, did successfully, and no report was made of the incident. We dispose of this first suggestion of negligence, before proceeding to consider the second and more important one. If we admit that the several employees mentioned were negligent in failing to discern the difference between smoke and steam, and in not reporting this discovery to the proper superior officers of the company, the defendant would not be liable for this negligence of co-employees, or fellow-servants in the same general business.

It was the settled law in this State, prior to the act of February 12, 1885, establishing by statute a contrary rule, that the employer is not liable in damages for any injury suffered by a fellow-servant, by reason of the faults or negligence of another fellow-servant or co-employee, in the same general business, unless such employer was chargeable with want of due care in having employed incompetent or unskillful servants in the particular business in which the injury was received.—*M. & M. Railway Co. v. Smith*, 59 Ala. 248; *M. & O. Railroad Company v. Thomas*, 42 Ala. 672. There is nothing in the record which would tend to challenge the skill, or impugn the competency of the engineer, or other employees to whom we have

referred. They were all very obviously fellow-servants of the plaintiff's intestate, who was injured by their alleged negligence; and, under the rule above stated, no liability would rest on the defendant company for the want of care of their co-employees in this matter.

We now come to the second phase of the alleged negligence of the company, in failing to use due care by resorting to proper tests for discovering the flaw in the boiler.

It has been said that this defect was latent, and, very manifestly, could not have been detected by the most careful inspection. It is shown, moreover, that inspections were made of this and other engines at stated times, and with sufficient frequency, and by competent officials; and they failed to detect the defect. No negligence can be based, therefore, upon the failure to discover it by inspection merely, because, we repeat, it was latent, and not so discoverable.

The burden of proof in this case is on the plaintiff, to prove negligence; and this is not shifted by proving only the fact of injury from the explosion of the boiler. Such is the rule where an employee or servant sues, although a different principle is held to prevail where an injury is received by a passenger on a railroad, in consequence of a defect in any of its machinery or appliances.—*M. & M. R. R. Co. v. Thomas*, 42 Ala. 672, 715; Pierce on Railroads, 382–383; *Illinois Cent. Railroad Co. v. Housk*, 72 Ill. 285.

The only two tests suggested are those of steam and water. The first, by reason of its danger, is shown rarely, if ever, to have been resorted to by railroads, or other companies using steam-boilers. It is neither practicable nor approved, because it serves to bring about the very thing it was intended to prevent. The one question, then, is, whether the company was guilty of a want of ordinary care, by failing to resort to the water, or hydraulic test, which consisted in applying a certain number of pounds pressure of water to the boiler by the aid of a suitable pump. It is testified by experts, that such tests, when made, are liable to strain the fibre of the iron, and impair the strength of the boiler, and thus, in themselves, tend to increase the hazard of explosion. The application of the hydraulic test, moreover, involved the stripping of the lagging on the outside of the boiler, and the removal of the flues from the boiler—a taking to pieces of the boiler, so to speak.

We conceive the correct and just rule to be, that a railroad company's duty to its employees does not require it to adopt every new invention or appliance useful in its business, although it may serve to diminish risks to life, limb, or property, incident to its service. It is sufficient fulfillment of duty to adopt such as are ordinarily in use, by prudently conducted roads engaged in like business, and surrounded by like circumstances.

[Louisville & Nashville Railroad Co. v. Allen's Adm'r.]

Nor can it be exacted of such common carriers, that they should adopt extraordinary tests for discovering defects in machinery, which are not approved, practicable, and customary. They are not responsible for accidents from defects not discoverable by tests which are both practicable and usual, and such as persons of ordinary prudence, engaged in like business, are accustomed to adopt under similar circumstances. The law is reasonable, and does not require such excess of caution as to embarrass or render impracticable the operation of the road, although the degree of care and vigilance required is not to be made dependent upon the pecuniary condition of the company, so as to expand or contract with the fluctuations of its finances. Pierce on Railroads, 273, 274; *Lake Shore R. R. Co. v. McCormick*, 74 Ind. 440; *Grand Rapids R. R. Co. v. Huntly*, 38 Mich. 537; *Smoot v. M. & M. Railway Co.*, 67 Ala. 18; *DeGraff v. N. Y. Central Railroad*, 76 N. Y. 130; *Carroll v. Staten Island R. R. Co.* (58 N. Y. 126); s. c., 17 Amer. Rep. 221, 228.

The evidence shows, without conflict, that the hydraulic test, as applicable to steam-boilers, was an extraordinary and rare test, not in customary or common use by either railroads or other persons, except when engines are first manufactured to be put on the road, unless they failed to work well; or except when engines were overhauled periodically in the workshops of the company.

It may be said that the engine here in question was repaired or overhauled in February, 1883, and that it is not shown that the test was then applied; and that this was negligence. The answer to this suggestion is furnished by the record. This repairing was done about ten months prior to the happening of the accident from which the injury occurred to the deceased, and there is no evidence tending to prove that the defect in the boiler existed at that time. On the contrary, the testimony shows that it could not have existed longer than from two to six months. The failure of the company, therefore, to apply the hydraulic test ten months previous, if negligence at all, had no proximate causal connection with the injury. The use of the test would not have discovered the defect.

Our conclusion is, that the deceased was injured by a mere misfortune or accident which he assumed as a risk of the business in which he was employed, and which was in no wise attributable to the negligence of the defendant or its servants. The evidence showing these facts clearly, and without conflict, the court erred in refusing to give the general charge to find for defendant.

Reversed and remanded.

CLOPTON, J., not sitting.