# Bivins *v.* Georgia Pacific Railway Company.

96  325
103  146
96  325
107  655

*Action for Damages on Account of Personal Injuries, by Brake-man against Railway Company.*

1. *Accidental injury to railroad employee.*—In an action by a brakeman against a railroad company to recover damages for personal injuries received by him in consequence of his clothes getting caught on a switch handle as he was attempting to board his train while it was in motion after he had set the switch, *Held*, that the plaintiff was not entitled to recover, where the only negligence or omission charged against the defendant was that the sill on which the machinery for throwing the switch rested, extended beyond the track embankment, and that there was under the extension no filling, so as to bring the embankment up to a level with it; and where the evidence showed that the plaintiff was familiar with the switch, and failed to show that the switch had caused any other accident during the five years of its use, or that there was anything in the nature of the structure calculated to entangle the apparel of a person, or that a switch so constructed was dangerous.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by R. R. Bivins, a minor, suing by his next friend, James A. Bivins, against the Georgia Pacific Railway Company. Judgment was rendered for the defendant, and the plaintiff appeals. The facts are sufficiently stated in the opinion.

SMITH & LOWE, for appellant.

JAMES WEATHERLY, *contra*.

STONE, C. J.—The City Court charged the jury, that if they believed the evidence, they must find for the defendant. This charge presents the only question assigned as error.

The plaintiff, Bivins, was a brakeman on a train of defendant, and was serving in that capacity. One of his duties was to set or throw the switches, when thereto commanded by the conductor. The personal injury for which this suit was brought was suffered by him in the attempt he made to get back on the train, while the train was moving. The feat attempted was customary in that kind of service, and it is not contended that the machinery of the switch was out of

order, or that the train was being moved too rapidly. The precise complaint is, that the bed or cross-tie on which the machinery of the switch was placed, and from which it was operated, was not properly placed and supported, to enable the operator to perform the service with safety to himself. The brakeman was acting under orders, and, so acting, had thrown the switch, was attempting to board the caboose while it was passing him, and in the attempt fell under the car and was injured.

All the testimony is. set out in the bill of exceptions, and it shows the following state of facts: The injury was sustained near Corona station. The switch at that place was on an embankment, four or five feet above the level of the ground. On one side, within two or three feet of the switch, was a trestle about seven feet high, and on the other the ground sloped up gradually to the level of the track, which it reached at a point about fifteen feet from the switch. The sides of the embankment were steep, and the level surface at its top was wide enough, and only wide enough, to support the track. The machinery for throwing the switch, together with its horizontal connecting rod, was placed on a cross-tie, which, for this purpose, was lengthened, and extended four or five feet beyond the embankment. This projecting part had no direct support. It presented twelve inches of level surface. The upright rod, or handle, used in throwing the switch, was about two and a half feet from the rail of the track—too near to permit a person to stand on the inside of it while a train was passing. A person attempting to board a passing train from the point where the switch was stationed, must stand on the outside of the rod, or handle, and from that point step on the steps of the passing train.

The facts stated above were testified to by the plaintiff himself; and his was the only testimony on these questions. He testified further, that he had served the road in the same service, and on the same section, for four months prior to the time at which he received the injury; that he had frequently performed the service he was performing on this occasion, and that he had never before encountered any inconvenience, or sustained any injury in such service. He stated that the train was moving slowly, and that when he had finished throwing the switch, the rear end of the train was a car length and a half distant from him, and that he thought he could have reached the level ground—fifteen feet distant—before the car would reach that point. He stated, however, in this connection, that he had not locked the switch—"that it was the rule for switchmen, when they

had thrown a switch, to stand by and watch it until the train passed, or to lock it, in order to secure the handle from flying off the staple; that he could have locked the switch, in which case he need not have stood by and watched it; but that locking it would have required the brakeman to unlock it for the train to pass the switch again, as it came back to go into the main line. * * Each of the crew had a key to unlock it with." The embankment, the switch, the trestle and their surroundings, were in the same condition they had been in since their construction, five years before.

Plaintiff's testimony, in immediate connection with the injury, was as follows: "That the caboose-car upon which he attempted to get had a platform and steps at each end, with hand-rails around the platform to hold by; that he first caught hold of the hand-rails on each side of the rear platform with each hand, and placed his left foot on the lower step of the platform, and as he was in the act of drawing his right foot up to also place it on the lower step, the leg of his breeches got caught on the switch handle in some way, which jerked his right leg, and caused his left leg to lose its footing; and in the attempt to regain it, his right foot was caught under the front trucks of the car next adjoining the caboose car, and was crushed nearly or quite off. And afterwards, while he was struggling to get on the platform, and holding on to the guard-rails with his hands, his left foot also got under the front trucks of the car next adjoining the caboose car, and was also crushed." We have now stated the substance of all the testimony relating to the injury and the cause of it.

In a case of suit by an employee of a railroad for an injury such as that complained of in this case, "the burden of proof is on the plaintiff to prove negligence."—*L. & N. R. R. Co. v. Allen*, 78 Ala. 494, 503; *M. & B. Railway Co. v. Holborn*, 84 Ala. 133. See, also, *Wilson v. L. & N. R. Co.*, 85 Ala. 269. In Ray's recent excellent work, Negligence of Imposed Duties, the author sums up as the result of very many decisions, English and American, the following principles: "Where the obligation is not in its nature so nearly absolute as it is said to be in the case of a passenger, and the circumstances of the accident suggest, at first blush, that it may have been unavoidable notwithstanding ordinary care, the plaintiff, charging negligence, assumes the burden of proving that the defendant has, by some act or omission, violated a duty incumbent on it, from which the injury followed in natural sequence; and, in the extreme case of a carrier, that which never happened before, and which in its character is such as

not naturally to occur to a prudent man to guard against its happening at all, can not, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening, and guarding against that remote contingency."—pp. 137-8. "The rule is that, in order that liability shall attach for an injury occasioned by something not inherently dangerous and defective, which is found upon the ground of, or in°use by one who is under a qualified obligation to the injured person, it must be shown either that the defendant knew, or that by the exercise of such reasonable skill, vigilance and sagacity as are ordinarily possessed and employed by persons experienced in the particular business to which the thing pertains, he should have known of its defective and dangerous condition, and that the nature and probable consequence of its use would be to produce injury to some one."—*Ib.* 145. "The mere fact of an injury happening is not evidence of negligence."—*Ib.* 146. "The fact of killing or injury, in the absence of any statutory provision to that effect, does not constitute of itself any presumption of negligence."—*Ib.* 147.

In the case of *Schultz v. C. & N. W. Railway Co.*, 67 Wis. 616, an injury was suffered by an employee in consequence of what was charged to be carelessness in overloading a car with coal. The company was in the habit of so loading its cars, and the employee knew that such was its habit. *Held*, that "If such method of loading was negligent, yet the plaintiff, having knowledge thereof, assumed the risk of injury therefrom, as one of the risks incident to his employment." We need not commit ourselves to the full extent of this decision.

On the measure of care and diligence necessary to be observed by railroad companies towards their employees, see *Wilson v. L. & N. R. R. Co.*, 85 Ala. 269; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548; *Richmond & D. Railway Co. v. Norment*, 10 Amer. St. Rep. 827; *Pryor v. L. & N. R. R. Co.*, 90 Ala. 32.

The only negligence or omission charged against the railroad company in this case is, that the sill on which rested the machinery for throwing the switch extended beyond the embankment, and that there was under the extension no filling up, so as to bring the embankment up to a level with it. It is not charged that during the five years of its use it had caused any other accident. Plaintiff was familiar with it, having been brakeman on that section of the road for four months. There is no proof that machinery thus constructed is dangerous. That is left to inference. It is not explained,

[Wolfe v. Underwood.]

nor attempted to be, how the brakeman's apparel became entangled with the handle of the switch, or that there was anything in the nature of the structure calculated to produce such result. The natural inference from the testimony is, that it was the result of a mis-step, was accidental, and would not be likely to occur again. There was no testimony from which the jury could infer negligence on the part of the railroad company, and the City Court did not err in the charge given.

Affirmed.