# Richmond & Danville Railroad Co. v. Bivins.

*Action against Railroad Company by Employe, for Personal Injuries.*

1.   *Injury to employé of railroad; contributory negligence.*—In an action against a railroad company by an employé to recover damages for personal injuries, alleged to have been caused by reason of the company's negligence in maintaining a switch, which plaintiff was required to operate, in a dangerous and unsafe condition, where it is shown by

the evidence that the switch in question was properly built and well adapted to the purposes for which it was built, that no accident had ever before happened to any one from operating it, that as plaintiff, after throwing said switch, attempted to board a moving train, which he knew was hazardous, his clothes were caught on the switch, and losing his footing on the moving train he was thrown under it, that there was no necessity for so perilous an undertaking, but other safe ways of boarding the train were open to him, which if he had adopted, the accident would not have happened, the plaintiff was guilty of contributory negligence, defeating his right of recovery; and on such facts the trial court should give the general affirmative charge in favor of the defendant.

APPEAL from the City Court of Birmingham.

Treid before the Hon. W. W. WILKERSON.

This was an action brought by the appellee, R. R. Bivins, against the Richmond & Danville Railroad Company to recover damages for personal injuries, alleged to have been sustained by the plaintiff, who was an employé of the defendant, through the alleged negligence of said defendant.

The circumstances of the accident, resulting in the injury to the plaintiff, as shown by the bill of exceptions, were substantially as follows: The plaintiff was a brakeman on a freight train which was being operated by the defendant on its road. At one of the stations along the line of the defendant's road, the conductor gave to the plaintiff the following order: "Go, set up your switch, catch your caboose, hold the cars, cut them loose, and run them on the side track, and get away as quick as possible." In obedience to these directions of the conductor the plaintiff went to the switch, and after setting it in order to let the freight train back from the main track on to the side track, he stood by the switch and waited for the train to back down, and as the rear platform of the caboose reached a point opposite to the switch, and while the train was still in motion, he grasped the rails of the rear platform with both hands, put his left foot on the last step of the platform, and was in the act of drawing up his other foot to place it also on the said step, when his pant's leg was caught in some way by some part of the machinery of the switch, and his right foot was drawn back, and his left foot slipped from the step, and both legs were drawn, one after the other, under the cars, and were cut off just below the knees.

[Richmond & Danville Railroad Co. v. Bivins.]

It was contended by the plaintiff, supported by the tendency of his evidence, that the switch where the accident happened was not properly constructed, and that on account of said negligence in failing to construct it properly, and to keep it in proper repair, the accident was caused. The testimony for the defendant on this point tended to show that the switch in question was such as was ordinarily used by prudently conducted railroads, and that there was no defect in the same, and it could be operated without any difficulty. The plaintiff testified in his own behalf that he had many times, after setting a switch, boarded the train while it was in motion, and that he had also at other times gotten on the train after it had stopped. There was some evidence for the plaintiff tending to show that it was a custom of brakemen on the defendant's road to get on and off a train when in motion after setting up switches. The defendant's evidence tended to show that there was no such custom, but that brakemen got on and off train, while performing their duties as switchmen, as often while the trains were still as when in motion. The defendant's evidence also tended to show, without dispute, that the switchmen, if they chose to do so, could have a train stopped, and make it wait until they had gotten on it.

In view of the decision of this court, in holding that the general affirmative charge should have been given for the defendant, it is unnecessary to make a more detailed statement, since such other facts as are necessary to a full understanding of the decision are sufficiently stated in the opinion.

There were verdict and judgment for plaintiff, assessing his damages at $15,000. The defendant appeals from this judgment, and assigns as error the many rulings of the trial court to which exceptions were reserved.

JAMES WEATHERLY, for appellant. — The general affirmative charge in favor of the defendant should have been given. There was no proof to support the charge of negligence alleged in the first count of the complaint, which claims damages by reason of a defect in the switch.—*Bivins v. Ga. Pac. R. R. Co.*, 96 Ala. 325. A general duty rests upon one employing machinery to see that it is reasonably sufficient for the services intended.

The switch was not intended for the use which the plaintiff made of it on the occasion of his injury.—Ray on Neg., 583 ; *Finnell v. R. R. Co.*, 29 N. E. Rep. 825 ; s. c. 129 N. Y. 669 ; *Railway Co. v. Davis*, 92 Ala. 300 ; *Wadlington v. R. R. Co.*, 20 S. W. Rep. 783 ; *Wolf v. R. R. Co.*, 14 S. Rep. 199 ; s. c. 88 Ga. 210 ; *Bivins v. Ga. Pac. Railway Co.*, *supra*; Ray on Neg., 145 and cases cited in note 2.

The plaintiff was guilty of contributory negligence.— *R. R. Co. v. Orr*, 91 Ala. 548 ; *Bradshaw's Admr. v. L. & N. R. R. Co.*, 21 S. W. Rep. 346 ; *R. R. Co. v. Schwabbe*, 21 S. W. Rep. 706 ; *Recka v. Steamship Co.*, 23 N. Y. 3.

The proof shows that there was no reasonable necessity for the plaintiff getting on the moving train at the switch, and his doing so, under the circumstances, as shown by the evidence, made him guilty of contributory negligence.—*Finnell v. R. R. Co.*, 129 N. Y. 669 ; *R. & D. R. R. Co. v. Thomason*, 99 Ala. 471 ; *Burgin v. R. R. Co.*, 97 Ala. 274 ; *R. R. Co. v. Free*, 97 Ala. 231 ; *Ricketts v. Street R. R. Co.*, 85 Ala. 600 ; *Wilson v. R. R. Co.*, 85 Ala. 269 ; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708 ; *Andrews v. R. R. Co.*, 99 Ala. 438.

A defendant is not liable for an injury happening from an unusual and unforeseen danger, which could not have been reasonably anticipated.—*Bivins v. Ga. Pac. Railway Co.*, 96 Ala. 325 ; Ray on Neg., 145 ; *Crafter v. Met. R. R. Co.*, L. R. 1 C. P. 300 ; *R. R. Co. v. Locke*, 112 Ind. 404 ; *Hubbell v. Yonkers*, 67 Wis. 616, *Nitro-Glycerine Case*, 82 U. S. 524 ; *Dougan v. Transp. Co.*, 56 N. Y. 1 ; *Loftus v. Ferry Co.*, 84 N. Y. 455 ; *Sjogren v. Hall*, 53 Mich. 274.

Bowman & Harsh, *contra*.

HARALSON, J.—1. On January 1, 1889, the defendant, the Richmond & Danville Railroad Company, acquired and took exclusive possession and control of the Georgia Pacific Railroad Company, and was operating it by and through its own officers and employés. On the day following, the 2d of January, 1889, the accident happened to the plaintiff, for which he instituted this suit. Prior to January 1, 1889, and since September 5th, 1888, the plaintiff had been in the employment of the Georgia Pacific Railway Company ; and on the trans-

fer by the latter company of its railroad and appurtenances to the defendant company, the plaintiff went into the service of defendant as flagman and switchman on one of its trains—the same employment he had under the former company.

He brought suit, first, against the Georgia Pacific Company; and, on substantially the same essential facts as are presented in this record, the court below gave the general charge in favor of the defendant, and the judgment in its favor, on appeal to this court, was affirmed. From the report of the case, it does not appear that the fact of the transfer of the railroad and its appliances from the Georgia Pacific to the defendant company, was shown.—*Bivins v. Ga. Pac. Railway Co.*, 96 Ala. 325.

In that case we said, there was no proof that the machinery as constructed was dangerous. That was left to inference; and, it was not explained nor attempted to be, how the brakeman's apparel became entangled with the handle of the switch, or that there was any thing in the nature of the structure of the switch calculated to produce such results; that the natural inference from the testimony was, that it was the result of a misstep, was accidental, and would not be likely to occur again; and there was no testimony from which the jury could infer negligence on the part of the railroad company. The plaintiff in bringing suit against this company, has sought to supply the deficiency of proof which disentitled him to a recovery against the other company, in that suit. He attempted to prove in this case, by his own testimony and that of an expert witness, that the switch, as constructed, was dangerous or unsafe for use by switchmen in boarding passing trains.

2. There are many questions raised for review in the record, which we will not consider, since, according to our view of the case, it is unnecessary to do so. We confine ourselves to the simple enquiry—if the case for the defendant is not made out on its plea of the contributory negligence of the plaintiff.

A switch is a mechanical device by which engine and cars may be run from one track to another. It is not, in its design, intended or built for the purpose of a step or platform, for one to mount from the ground, or from the cross-ties on which the switch is constructed, on to a moving train. Its highest design is reached, when con-

structed in such a manner, as that a switchman, whose duty it is to operate it, can do so, for the purposes for which it was intended, with safety to himself.—Ray on Negligence, 583. The question in such cases is, not whether the machinery was the best known in use on railroads; but, it is regarded as a sufficient fulfilment of the company's duty, to adopt such as is in ordinary use by prudently conducted roads, engaged in like business and surrounded by like circumstances.—*Wilson v. L. & N. R. R. Co.*, 85 Ala. 272; *Ga. Pac. Railway Co. v. Propst*, 83 Ala. 518; *L. & N. R. R. Co. v. Allen*, 78 Ala. 494.

3. The evidence in this case fails to show that the switch was not a proper one, and did not perform its duty well; but, on the contrary, it appears to have been well adapted to its designs, and no accident had ever before this happened to any one from operating it. It may be conceded, if the switch was a proper place at which to board a passing train, and at which the defendant expected its switchmen to do so, that a platform might have been constructed in connection with it, making it a less dangerous undertaking; but, it is not shown that the company required or even expected its employés to undertake such a risk. If the company did not make such a requirement, if no accident had ever before this happened there to any one operating the switch, and if the company could not reasonably anticipate an accident, such as plaintiff suffered, as a natural sequence from the ordinary use of the switch, it is difficult to see on what principle it would be required to provide a platform in connection with such a structure. A company is not bound to its employés to take precautions against all possible dangers, especially when assumed by them, at their own convenience and risk. Its duty is performed by guarding against those reasonably probable. If one, for instance, in the services of a railroad, as a switchman in its yard, gets his foot caught in a frog, connecting the converging tracks, and is run over and killed by a near approaching train, the company has been held not to be responsible, although if it had caused the opening of the frog to be filled in with a block of wood, the accident would not have occured. Or, if one attempt to cross or run along in front of an engine, on a side track used for the purpose of stowing cars, and stumbling on the cross ties, falls, and is injured by the engine before it can be

stopped, the company can not be held responsible for not ballasting the side track, although if it had done so, the accident would probably not have happened.—*Bivins v. Ga. Pac. Railway Co.*, 96 Ala. 325 ; *Finnell v. Railroad Co.*, 129 N. Y. 669; *The Penn. Co. v. Hawkins*, 93 Ill. 580 ; *Appel v. Railway Co.*, 111 N. Y. 550; Ray on Neg., 137, 138.

4. It is common knowledge, that brakemen and other employés on railroads assume, of their own accord, many and unnecessary risks in the performance of their duties. Cautious at first, when unskilled and under instructions and warnings, they gradually become less timid and careful ; and as their own experience and skill increase, they become expert and seemingly reckless, undertaking feats of skill, self-imposed and unnecessary, which are fraught with very great peril to life and limb. But, on what just principle is it, that the consequences of such risks can be visited upon an employer, when accident and personal injury befall the employé? If no rule of the company and no emergency made it necessary for the plaintiff to undertake to board the train as it passed him at this switch, how can he hold the company responsible for so hazardous an undertaking as to attempt it, especially when he was well acquainted with the switch and how it was constructed, and knew the peril he was encountering in such a reckless attempt as he made?

5. There were two comparatively safe ways for him to have taken, and another absolutely so, besides the one he chose. The engineer, for the time, was under his control. The engine moved at his beck. He might have set his switch for the train to back, and have stepped a few feet to the eastward, where he would have been on level ground, or, he might have gone just across the track from him, where there was a smoothe, firm place between the main and switch tracks, from either of which places, he would have been free from any possible entanglement with the switch. Or, to have avoided any danger whatever, he might not have boarded the train at all, until it had backed down on to the main track and returned thereon to where he was standing, at which point, with the loss of only a moment or two, he might have brought it to a stand-still, to enable him to board it. As has been stated, plaintiff knew it was a hazardous undertaking to attempt to mount the steps of this train, as it pas-

sed him. He establishes this by his own evidence and that of his expert witness. He makes out a case where an effort to do so, was accompanied with such danger as no prudent man ought to undertake it. It is a familiar principle, which common sense, as well as the rules of law, ought to teach any one, that where one in the employ of a railroad, knowingly selects a dangerous way, when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence.—*L. & N. R. R. Co v. Orr*, 91 Ala. 548; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 137.

6. There is no pretense that the engineer was at all in fault, and the court so charged the jury. It was attempted to be shown, that plaintiff was ordered by the conductor to board the train. The precise order by him to plaintiff as shown was: "Set up your switch; catch your caboose; hold the cars; cut them loose; run them on the side track, and get away quick." What is meant by this order we are not given exactly to understand. But, certainly, it does not mean, that the plaintiff was to do an unsafe thing in complying with it. If the conductor meant, by catching the caboose and holding the cars, that the plaintiff was to get on the caboose and hold the cars after getting on, the order surely did not mean that he should get on at the switch, or at any other particular place, and unless the order implied to the contrary by its terms, we are to presume it was intended he should comply in a manner safe to himself.— *Penn. Co. v. Hawkins*, 93 Ill. 583.

7. There is more or less danger and liability to personal injury connected with the service of operating a railroad train at any time. All employés contract with the company with that understanding, and assume the risks incident to the service. If the company is without fault, or even if guilty of mere negligence, and one who is injured, contributed proximately by his negligence to bring about his injury, the company is not responsible. From any standpoint, at which we have been enabled to view this case, the accident which befell the plaintiff, so calamitous to himself, was one of those unfortunate occurrences which the railroad company can not be held to have reasonably anticipated, and which plaintiff, by his own imprudence and want of care, contributed proximately to bring upon himself.

The general charge should have been given for the defendant.

Reversed and remanded.