# Louisville & Nashville Railroad Co. v. Andrews.

### Damages for Injury to Employee.

(Decided Nov. 30, 1910.　Rehearing denied Feb. 16, 1911.
54 South. 553.)

1. *Charge of Court; Directing Verdict*—Where there is evidence authorizing a verdict for the plaintiff, the defendant is not entitled to have the verdict directed for him.

2. *Master and Servant; Injury to Servant; Superintendents; Evidence.*—Where the only evidence of the hostler's negligence was in the manual labor of lowering a push bar, which had nothing to do with the superintendence of the master's work, or of other employes, he cannot be said to have been engaged in any act of superintendence while performing such manual labor within the meaning of subdivision 2, section 3910, Code 1907. hence, such proof failed to support a count under such subdivision.

3. *Same; Duty to Servant; Lights.*—Where a master is under the duty to furnish lights for his servants and negligently fails therein, he becomes liable for injury occasioned thereby.

4. *Same.*—It is the duty of the master to adopt and maintain an adequate system of lighting its premises where its servants are required to work at night, but a master is not an insurer of the safety of its servants against all possible injury on account of the defects therein, but is only held to the exercise of reasonable care and skill.

5. *Same*—The evidence in this case stated and examined and held to fail to show negligence on the part of the master as to its lights or system of lighting.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Action by John L. Andrews against the Louisville & Nashville Railroad Company, for damages for injuries

received while engaged in the business of the master. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GOODWYN & MCINTYRE, for appellant. Plaintiff failed to prove his complaint or any count thereof, and hence, the defendant was entitled to the affirmative charge.—*Richards v. Sloss-S. S. & I. Co.* 146 Ala. 245. No superintendence was shown, nor was Cunningham in the charge or control of an engine within the meaning of subdivision 5, section 3910, Code 1907, and hence, count 1 was not proven.—*L. & N. v. Gorse,* 137 Ala. 319. Count 2 was not sustained by the evidence, but the evidence showed the contrary to be the fact.—*Dantzler v. DeBardelaben C. & I. Co.* 101 Ala. 309; *N. C. & St. L. v. Hill,* 147 Ala. 240. The push bar was not shown to be out of repair, and hence, count 4 was not sustained by the evidence.—*Woodward I. Co. v. Curl,* 153 Ala. 215. The roundhouse was shown to be properly lighted, and the testimony failed to disclose that the condition of the lights caused the injury.—*So. Ry. v. Smoot,* 150 Ala. 361; *Clements v. A. G. S.* 127 Ala. 171. Plaintiff's duties did not require him to assist Cunningham.—*Woodward I. Co. v. Curl, supra; Pioneer M. & M. Co. v. Talley,* 152 Ala. 162. The court erred in giving charge requested by the palintiff.—Authorities *supra.* Andrews was not subject to the orders of Cunningham.—*Freeman v. Sloss-S. S. & I. Co.* 137 Ala. 485. The court erred in overruling demurrers to the complaint.—*N. C. & St. Ry. v. Calderwood,* 89 Ala. 247; *Tenn. C. I. & R. R. Co. v. Bridges,* 144 Ala. 229; *Reeves v. Anniston K. M. Co.* 154 Ala. 565. The demurrer to plea 2 should have been overruled.—Authorities *supra.*

W. A. JORDAN, and J. M. CHILTON, for appellee. Cunnigham was in charge or control of the engine within the

meaning of subdivision 5, section 3910, Code 1907.— *L. & N. v. Richardson*, 100 Ala. 232. It was a question for the jury under the evidence whether Cunningham was guilty of negligence in handling the push bar.—3 Enc. of Evi. 102; *Steel v. Townsend*, 37 Ala. 247; *A. & V. R. R. Co. v. Barrett*, 20 South. 820. It is the common law duty of an employer to furnish a safe place for its employees to work and when the work is done at night, this includes sufficient lighting of the premises.—1 Lab. 328; 90 Fed. 774; 63 N. Y. Supp. 47; 101 Fed. 390; 4 Thomp. on Neg. sec. 3892; *Arnold's case*, 80 Ala. 600. The complaint was sufficient and the demurrers were properly overruled.—*Hawkins' case*, 92 Ala. 241; *Conrad's case*, 109 Ala. 133; *Orr's case*, 94 Ala. 602; *George's case*, 94 Ala. 199; *Chambless' case*, 104 Ala. 655; *Mothershed's case*, 97 Ala. 261; *Dusenberry's case*, 94 Ala. 413. The hostler had both control and superintendence.—*Bailor's case*, 101 Ala. 488; *Culver v. A. M. Ry. Co.* 108 Ala. 330; *K. C. M. & B. v. Crocker*, 95 Ala. 412; *Woodward I. Co. v. Andrews*, 114 Ala 247; *L. & N. v. Bouldin*, 110 Ala. 121; Dresser, pp. 287, 290 and 291. Andrews was not a volunteer but was acting under instructions properly given. *L. & N. v. York*, 128 Ala. 305; *Hollard v. T. C. I. & R. R. Co.* 91 Ala. 444; 1 Dresser 500; *Guyton's case*, 122 Ala. 240; *Propst's case*, 85 Ala. 203; *Burton's case*, 97 Ala. 240; *Steel v. May*, 135 Ala. 483; *Goodloe v. M. & C.* 107 Ala. 233; *Lampkin v. L & N.* 106 Ala. 287.

MAYFIELD, J.—Appellee was a machinist, employed by appellant in its roundhouse at Montgomery. His chief duty was to repair engines, to discharge which it was frequently necessary to go under the engines; and for this purpose pits were dug between and under the railroad tracks. In case the engine to be repaired was *dead*—that is, not supplied with steam—it was moved

over and off these pits by a switch engine operated by a hostler. The hostler was employed in the switching yards of the appellant company, and one of his duties was to bring in and take out the engines which were repaired. On the night of the injury complained of plaintiff, appellee here, called this hostler (Cunningham) to remove an engine from one of these pits. Each engine is equipped with a large iron bar called a "push bar," or "knuckle," attached at the front end, which when let down extends out horrizontally over the pilot, and is used to couple onto other engines necessary to be moved. This bar on the engine in question weighed about 250 pounds. When not in use the push bar is raised upon a hinge, attached at one end, and goes back and rests upon the front of the engine, in which position it is sesured by means of a spring or lever. The hostler, on the occasion of the injury, called generally for some one to come and assist him in lowering the push bar so that it could be used to couple the switch engine onto the *dead* engine which was to be moved; and as plaintiff was the one who desired the engine moved he went to the assistance of the hostler, to aid him in lowering the push bar, and in so doing he suffered the injuries complained of, as he says, by the bar's striking him as it fell, when released by him or by the hostler in their attempt to lower it. He was knocked senseless and so remained for some time and, as his testimony showed, was seriously and painfully hurt.

The trial was had on counts 1, 2, 4, 5, and 6. Count 1 is under subdivision 5 of the employer's act (Code 1907, § 3910), and seeks to recover on account of the negligence of the hostler, Cunningham, who is alleged to have been in control of the engine. Count 2 is under the second subdivision of the act, and is based also upon the negligence of Cunningham; and alleges that he was in

superintendence of some part of the work. Count 4 is under subdivision 1 of the act, and alleges a defect in the machinery, to wit, the push bar attached to this engine. The fifth count seeks to fasten upon the master the common-law liability for failure to properly light the premises in which plaintiff had to work. Each of these counts was subsequently amended, and, as amended, demurrers were overruled thereto. To each count the defendant pleaded the general issue and special pleas of contributory negligence. A demurrer, however, was sustained as to plea 2, one of the pleas of contributory negligence. If this was error it was without injury, because there were other pleas setting up virtually the same defense attempted by it.

While error is assigned as to all the rulings on demurrers to the complaint, and some insistence is made in appellant's brief as to such assignments, we think the counts as last amended sufficient to support the judgment, and not subject to the demurrers interposed.

Count 1 was sufficient under the fifth subdivision of the employer's liability act. It sufficiently alleged that the hostler, Cunningham, was in control of the engine, within the meaning of the statute, so as to render the master liable as for his negligence under this particular subdivision. He is alleged to have been, and the proof seems to show that he was, at the time, the sole person in charge or control of the switch engine. The engine could not run automatically, and if he was not in charge or control no one was. The facts alleged and proven distinguish this case from *Richardson's case,* 100 Ala. 232, 14 South. 209.

It was likewise a question for the jury, as to whether or not this hostler was guilty of actionable negligence which was alleged, and which proximately resulted in injury to plaintiff. While there is no direct or positive

[Louisville & Nashville Railroad Co. v. Andrews]

evidence of any negligence on his part, there was evidence, to wit, that of plaintiff, of the hostler, and of others probably, from which it was open to the jury to infer such negligence, and hence the court properly refused to give the affirmative charge for defendant as to this count. It was open to the jury to find under this count as they did find.

We do not think, however, that the plaintiff proved his count under the second subdivision of the employer's act. It was not proven that Cunningham was intrusted with any superintendence, within the meaning of this subdivision; and if this could be said to be doubtful, or if there was any evidence to carry this question to the jury (but we think there was none), certainly there was no evidence showing or tending to show that the negligence of Cunningham (if such was proven) was "whilst in the exercise of such superintendence," which the statute requires. The only negligence on his part, attempted to be shown, was in the manual labor or effort of lowering the push bar or knuckle, and had nothing whatever to do with the superintendence of the master's work or of other employees.—*Dantzler's case,* 101 Ala. 309, 14 South. 10, 22 L. R. A. 361; *Freeman's case,* 137 Ala. 481, 34 South. 612.

We do not think there was any evidence to support a judgment under the counts which were base upon the negligence of the master in failing to suff iently light his premises in which plaintiff was requ ed to work.

The plaintiff's evidence on this subject was as i (lows: "That at the time of the injury there were th e arc lights, and drop lights on every post at the roun house, and there was a post between every pit, but that only one row of posts had drop lights, and that is the front row next to where the pilot stops; that he thought six or

eight posts and then two drop lights at the wheel press; then two in the tool room; then two in the little office, and one inside 'where we had to go get reports'; and that he had nothing to do with the lighting of the building; that up to four or five minutes of the injury the three arc lights were burning and gave good light, but there were no drops; that at the time one of the arc lights was out and one would come and flash and go out, and that the one that burned was nearest to him, but that the engine made so much smoke that the smoke could not get out at the place for it to go; that he would have to see over three engines to do what he was doing, aside from the smoke; that the lights had been tolerably good with the exception of once or twice, but that the night he was injured they had to turn a turntable by hand, as they did not have the power. The turn tables were turned by electricity, the same power that furnished lights in the house.   *   *   *"

The defendant's evidence on this subject was by one Gorey, and was as follows: "That he had been engaged in mechanical work and roundhouse work about 26 years, and that the condition of the lighting arrangement of the roundhouse, where the injury occurred to Andrews in October, 1908, was good compared to the lighting of roundhouses on well-regulated railroads; that at the time it was the best lighted roundhouse for the size that he had ever seen; that there were three arc lights, and that the workmen in the roundhouse were furnished with a galvanized iron torch, holding about three pints of headlight oil; that it has a cotton wick about one inch in diameter and burns a flame about $2\frac{1}{2}$ inches by 6 or 7 inches high, making a good big light; that in the roundhouse, running a median line there was a line of posts for the purpose of supporting the roof; that on every alternate post there was a loop wire

in a circuit so that a boiler maker might screw in an extension cord 50 or 60 feet, and take the light under the engine or any place where he was confined so that the smoke of the torch would not bother him; that there was a socket on every second post for this purpose, and this purpose only, and it was the only purpose for which they were used; that at one time he saw an incandescent lamp in one of these sockets and ordered it to be removed immediately and put back into the tool room where it belonged; that the smoke under certain conditions of the atmosphere sometimes did not rise and would lay close to the floor, and that when the atmosphere is right it would rise and float out of the tops of the doors all the way around the roundhouse, and that when the atmosphere was not right for the smoke to float out that they could not control the smoke at all."

On cross-examination: "That at night he was generally at home; that he could not pick out in his mind the night of October 30, 1908, and tell how many lights were in commission that night; that the atmosphere frequently got into a certain condition where the smoke would come down to the ground; that a dozen times the electric power was out, and they had to turn the turntable by hand, but that he did not know whether the machinist did that or not; that the electric current for the turntable and the roundhouse was on different circuits; * * * that he visited the roundhouse various times after supper, but that he could not recall the condition of the lights on October 29 and 30, 1908,' 'etc.

It is true, as is said by Mr. Thompson in his valuable work on Negligence, that if the master is under the duty to light his premises or to furnish lights for his servants, and negligently fails to perform this duty, he is liable; and he is also under the duty, in some cases like the one in question, to adopt and maintain an adequate sys-

tem of lighting when he requires his servants to work at night; and of course he is liable in damages to those servants who are injured in consequence of his failure to perform and discharge this duty. But in this respect, as in all others, he is not an insurer of the safety of the servant against all possible injuries, on account of defects in the system of lighting or the failure of the lights on all occasions.

The duty of the master in this respect, as to furnishing lights, is the same as it is in other cases—this is, to exercise *reasonable care and skill* to the end that the places in which he requires his servants to work shall be as reasonably safe as is compatible with the nature of the work and the surroundings. The rule is the same as that as to furnishing and maintaining safe appliances and machinery, and as to selecting competent servants, thus expressed by this court: "The master is in no case an insurer of the absolute safety of the appliances and machinery employed in the business. He is in no case held to an undertaking to select absolutely competent and careful servants. The rule requires of him no more than the exercise of reasonable care in either case—such care only as men of reasonable and ordinary prudence exercise; and when he has done this, he cannot be held responsible for injuries which result from the incompetency of servants, or latent defects in machinery, so selected and employed."—*Holland v. T. C. I. & F. Co.*, 91 Ala. 450, 8 South. 525 (12 L. R. R. 232).

It is, however, the duty of the master, to use reasonable diligence to protect his servant from unnecessary risks; and for the omission of such diligence, which is equivalent to negligence or want of care, the master is answerable to the action of the servant for all the damages which proximately result from such negligence. But the relation of master and servant never implies an

obligation on the part of the master to take more care of the servant than a prudent man may be reasonably expected to do for himself. He is never the absolute insurer of the servant's safety.

The Supreme Court of New York, in a case somewhat like this, held that the defendant was not liable for negligence in failure to properly light the plant in which the servant plaintiff was at work; and some parts of the opinion may be aptly applied to the facts in this case. The court spoke on the subject as follows: "The recovery cannot * * * be sustained upon the ground that the defendant was negligent in not sufficiently lighting the passageway. It is conceded that the plaintiff provided, in the first instance, a proper system for lighting the passageway, and supplied a sufficient number of lamps for that purpose. These lamps, so far as appears, had never before failed to accomplish the purpose for which they were intended, and the extinguishment of all of them was in direct violation of defendant's orders. Lamps 6, 7, and 8 were not to be extinguished until the employees had left the building, while lamp 9 was to be kept burning day and night. Why were these lamps extinguished on the evening in question? What caused them to go out? Was it by reason of the negligence of the defendant or of a co-servant? Was it due to some defect in the system for which the defendant was liable, or was it due to some agency over which he had no control? A correct answer to these inquiries cannot be obtained from the record before us. Before the plaintiff was entitled to recover, it was necessary for him to establish personal fault on the part of the defendant, or what is equivalent thereto; and until he had done that the defendant was entitled to the benefit of the presumption that he had performed his duty."—*Dorney v. O'Neill,* 34 App. Div. 54 N. Y. Supp. 235.

14—171

We can find no evidence in this record that tends to show actionable negligence on the part of the master as to lighting the premises. It is by no means a case of "res ipsa loquitur." The undisputed evidence shows that the master had provided a system of electric lighting for the plant, and had also provided galvanized iron torches holding about three pints of headlight oil, and having cotton wicks about one inch in diameter, which burned a flame about two and one-half inches by six or seven inches high and made "a good big light." Plaintiff was shown to have had one of these lamps on the occasion upon which he was injured.

It was undisputed that the plant was supplied with arc and incandescent bulb lights, some of which could be attached to cords and carried from place to place, as needed, when smoke prevented the use of the lamps; that these arc lights were burning up to within four or five minutes before the accident; that at the time of the injury one of the arc lights was out, and one would come and flash and go out; that the arc light nearest to the plaintiff was burning at the time, but the smoke from the engine prevented him from seeing well on the occasion. Plaintiff himself testified that "the lights had been tolerably good with the exception of once or twice." The only other witness who testified as to the lights said that it was the best lighted roundhouse of its size he ever saw.

There is nothing here to show any actionable negligence on the part of the master—nothing whatever to show what caused the lights to go out when they did, or what caused the current of electricity to cease flowing when it did. It was not shown to be due to the negligence of the master; and of course it had no time to remedy the defects after the lights went out and before the injury occurred. It is not even shown that the mas-

ter or its superintendent knew of the fact, or had any reason to anticipate that the lights would go out or to suspect that they were not in first-class condition at the time of the injury. The plaintiff seems to have been the only one who knew that the lights were out on the occasion of the injury. If the lights went out (as he said they did) so suddenly, he should have waited for them to come on again, or else not attempted to do what he did, without proper lights.

To allow the plaintiff to recover in this case, because of failure to provide lights, would be nothing less than making the master the absolute insurer as to the lights. Certainly there is nothing tending to show actionable negligence on the master's part.

There is likewise no evidence in this case which shows or tends to show any defect in the ways, works, machinery, or plant, such as to make the master liable under the first subdivision of the statute. The particular defect alleged, was that the push bar was out of repair. There is no evidence whatever to support this averment. There is nothing to show that it was different from any other push bar either before or after the accident. The mere fact that it was difficult to lower it, and that while being lowered it fell against and injured plaintiff, does not tend to prove the averment that it was out of repair.

It follows that the general affirmative charge ought to have been given for the defendant as to all the counts, except the one declaring under the fifth subdivision; and for these errors the judgment must be reversed, and the cause is remanded.

It is unnecessary to treat other questions raised.

Reversed and remanded.

SIMPSON, MCCLELLAN, and SAYRE, JJ., concur.