# Louisville & Nashville R. R. Co. *v.* Hall.

## *Injury to Servant.*

(Decided April 15, 1915.   Rehearing denied May 20, 1915.
69 South. 106.)

1. *Master and Servant; Injury to Servant; Negligence.*—Where the action is predicated on injury from a particular defective appliance, plaintiff is confined to proof of the negligence specified.

2. *Same.*—Where the action was for injury to a servant, and the complaint charged that the injury was due to a defect in the ways, works, machinery or plant of the defendant, the burden was on plaintiff to reasonably satisfy the jury that a defect existed which was the proximate cause of the injury, and that such defect arose from or had not been discovered or remedied owing to the negligence of the master or employer.

3. *Same; Defective Appliances; Duty.*—A master owes his servant the duty to supply him with appliances reasonably suitable for the purposes in view, and in the selection of which reasonable care and skill has been exercised; there is no obligation to furnish the latest devices or the best appliances for the servant's use.

4. *Same.*—The evidence examined and held insufficient to take to the jury the question of a defect in the appliances; the evidence rather tending to show that the appliances furnished were in good condition and that they were each of the kind which had been ordinarily used for such work.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by C. F. Hall against the Louisville and Nashville Railroad Company for damages for injuries suffered while in its employment. Judgment for plaintiff and defendant appeals. Reversed and remanded.

EYSTER & EYSTER, for appellant.

TROUP & NIX, for appellee.

GARDNER, J.—Action by appellee against appellant under the Employers' Liability Act (section 3910, Code 1907). Count 1 was eliminated by demurrer, and the cause proceeded to trial upon counts 2 and 3. Count 2 is under subdivision 1 of said section 3910, charging a defect in ways, works, machinery, or plant of the defendant, in that a jigger, or small turntable, was defective. Count 3 charges plaintiff's injury as a proximate result of negligence of one Matthews, employed by defendant and intrusted with superintendence, and while in the exercise of such superintendence, as follows: "Whilst in charge of a gang of men operating a jigger, or small turntable. Said negligence consisted in ordering the men under him to move a set of car trucks with a jigger not sufficient to hold said truck."

The following quoted extract from the evidence offers a definition of a "jigger," as disclosed by this record: "A jigger is a turntable which can be used from one place of the yard to another. * * * A jigger consists of two short rails bound together at the back,

and also through the middle, with crosspieces. The rails are exactly the same width apart as the track. The rails are made wedge-shaped on one (end), and on the other there is a block, and on the end where the block is there is a rod which connects the rails, and there is a heavy piece of timber, looks something like a cross-tie, which connects the rail, and underneath this piece of timber there is a piece of metal called a center plate. This piece of metal is round-shaped and about 6 inches in diameter."

And by another definition: "It consists of two angle irons which are flat on one end and about 3½ inches high on the other. There is a tie in the center of the two angle irons. The flat end of the jigger is open so that the wheels of a truck will roll upon them to the other end of the jigger, where the angle irons are about 3½ inches high. There is an iron brace which runs from one angle iron to the other, parallel to the tie, which is in the center, and on the high end of the jigger a block is bolted for the purpose of keeping trucks from running over. This jigger is used for the purpose of rolling trucks which are on the track upon the jigger, and then the jigger can be turned so as to roll the trucks off that track onto another one, and this is its purpose."

The evidence further shows that in using the jigger it was rested upon a "block of wood" or "piece of dead wood," as it was called, which block on this occassion was put down between the ties; and one witness for the plaintiff estimated its size as being about 26 or 30 inches long, 5 inches thick, and 12 inches wide, and the same witness stated that the cross-ties were about 12 inches apart, and the block of wood was placed parallel with and between the cross-ties, and the ties were filled in with cinders, but did not know whether entirely or not;

that this block of wood was "the same size block as had been used all the time, * * * and was in good shape and condition"; that the jigger was not fastened to the block, and the block did not turn with the jigger.

(1) Count 2, as previously stated, rested for recovery upon a defective jigger or turntable, and under the authorities in this state the plaintiff is confined to proof of the negligence specified.—*L & N. R. R. Co. v. Lowe,* 158 Ala. 397, 48 South. 99. The definitions given for a "jigger" in this record do not include the block or piece of dead wood upon which it is generally rested, as a part of the jigger, and plaintiff seems to have offered no proof sufficient to show that it is a part thereof. It is not connected therewith, and it may be the jigger, as described in the above definition, is a complete instrument or machine independent of the block of wood, and that what is really required is that it rests upon a sufficiently solid foundation. No witness seems to refer to the block of wood as a part of the jigger; the nearest approach thereto was when it was referred to as the baseboard on which the jigger rested. But, however this may be, and conceding (for the purpose of this case) that the block was a part of the jigger, we are of the opinion that plaintiff has not made out his case under either of the counts.

(2) Under count 2 the burden was on the plaintiff to reasonably satisfy the jury that a defect existed in the jigger, that such defect was the proximate cause of the injury alleged, and that "said defect arose from, or had not been discovered or remedied owing to, the negligence of the master or employer, or of some person in the service of the master or employer," etc.—*L. & N. R. R. Co. v. Lowe, supra; Tuck v. L. & N. R. R. Co.,* 98 Ala. 152, 12 South. 168.

At the time of the alleged injury the plaintiff was engaged in work for the defendant in its shops in New Decatur, working on a car, but on work in no manner connected with the jigger, to which his back was turned, and from which under ordinary conditions he was standing at a safe distance. One Matthews had charge of the jigger, and ordered the men to roll some car trucks on the jigger for the purpose of moving them, when it slipped and struck the plaintiff on the leg. All the evidence shows the alleged injury was the result of the jigger slipping. It is the plaintiff's theory that the slipping was caused by the block of wood tipping or tilting, and that this is a result of a defective block and jigger. The block was placed parallel with and in between the cross-ties, it seems, and plaintiff's witness gives the width of the block and the distance between the cross-ties as about the same—12 inches. The fact that the width of the block appears to be such as to fit in between the cross-ties, taken in connection with the purposes of a jigger to move car trucks and place them on the track, etc., may be considered as of some significance in finding a reason why the block of wood was of that particular width. The plaintiff seems to insist that, if the block had been 36 inches wide instead of 12, on this occasion, it would have been less likely to tilt, and that this proof tended to show a defect; and he further insists that, had a pin been placed through the jigger and into a hole in the block of wood, the jigger would have been less likely to slip, and that, as there was no such pin, this also tended to show a defect.

The proof was without dispute that the block of wood was in good condition, with no defects whatever; that it was the proper size and the kind ordinarily used.

The plaintiff himself knew nothing about a jigger, but his witness Holt, in speaking of this block said: "This block of wood was put down there as a baseboard; was the same size block as was used all the time and as has been used since then. It was a rectangular piece of wood, and was in good shape and condition, so far as I know. I suppose the jigger was in good condition, too."

(3) No proof was offered by the plaintiff to show that a larger block had ever been used in such work, or that one larger was practical or best, and there is no evidence whatever tending to show that this block was not in every respect reasonably suited for the purposes for which it was used. So as to the jigger no proof was offered to show that any pin has ever been placed through the iron plate of a jigger to connect with a hole in the block of wood, nor to show that there was ever such a jigger or any practical test of a device of such character, or that, in fact, it was practical or feasible. In the case of *L. & N. Ry. Co. v. Bontrager*, 186 Ala. 181, 65 South. 28, is this language: "The master in the selection or maintenance of his appliances, machinery, etc., is not an insurer against the servant's injury while in his service. The master's obligation is generally to exercise reasonable care and skill to afford reasonably safe appliances, etc., reasonably suitable for the purpose in view. It is the character and degree of care and skill that a reasonably prudent man would exert and exercise in similar circumstances. There is no imperative legal obligation on the master to furnish the latest device or the best appliances for the servant's use."—citing Bailey on M. & S. § 56 et seq., and section 94 et seq.; *Huyck v. McNerney*, 163 Ala. 244, 50 South. 926; *Holland v. T. C. I. Co.*, 91 Ala. 450, 8 South.

524, 12 L. R. A. 232; *L. & N. Ry. Co. v. Andrews,* 171 Ala. 200, 54 South. 553.

It was said in *L. & N. Ry. Co. v. Hall,* 91 Ala. 112, 8 South. 371, 24 Am. St. Rep. 863, that "something must be accorded to diversity of judgment." See, also, in this connection, *L. & N. Co. v. Allen,* 78 Ala. 494; *R. & D. Ry. Co. v. Bivins,* 103 Ala. 142, 15 South. 515. Mr. Labatt, in his work on Master & Servant (volume 1, § 35), says: "The true question for the jury is not whether or not the master could have done anything to prevent the injury, but whether he did anything which under the circumstances, in the exercise of ordinary care and prudence, he ought not to have done, or omitted any precaution which a prudent and careful man would or ought to have taken. * * * A servant, therefore, will not be held to retain any verdict in his favor which is based on the hypotheses that negligence is imputable to the master because his instrumentalities or methods do not answer to the one or the other of the following descriptive epithets and phrases: 'Best known, best possible,' etc. * * * A fortiori is a jury not warranted in finding for the plaintiff where there is no evidence that the alternative arrangements suggested would have been safer than those actually adopted when it is apparent that the latter was reasonably safe?"

Mr. Bailey, in his work on Master and Servant (volume 1, § 162), states that: "The underlying doctrine of the master's duty to the servant with respect to the character of the appliances furnished and place of work, as well as other duties that rest upon him, is that of ordinary care. * * * If the machinery be of an ordinary character and such as can with reasonable care be used without danger, it is all that his duty requires; it is sufficient if reasonably safe."

And in section 168 he says: "Where the appliance furnished by the master is reasonably safe when properly cared for, even if there was a standard article which was more safe, the master is not obliged to procure it to relieve himself from the charge of negligence, much less a new invention not standard."

See, also, 2 Labatt on M. & S. § 672.

In the case of *Ga. Pac. Ry. v. Propst*, 83 Ala. 526, 3 South. 766, speaking somewhat to this subject, it was said: "It is certainly the duty of corporations, and of all others employing servants, to see to it that their 'ways, works, machinery, and plant' shall not be mantraps, and not to expose their employees to needless hazard; and in selecting between different machinery and instrumentalities, they must keep themselves reasonably abreast with improved methods, so as to lessen the danger attendant on the service. They are not, however, required to adopt every new invention. Something must be left to enlightened judgment and discretion. It is supposed that in such matters even the skillful and experienced will frequently differ in the choice of instrumentalities; while neither should be adjudged negligent for not conforming to some other method believed by some to be less perilous. The correct rule is declared in 78 Ala. 494, 503, as follows: 'A railroad company's duty to its employeés does not require it to adopt every new invention or appliance useful in its business, although it may serve to diminish risks to life, limb, or property incident to its service. It is sufficient fulfullment of duty to adopt such as are in ordinary use, by prudently conducted roads engaged in like business, and surrounded by like circumstances.

See, also, *R. & D. Ry. Co. v. Jones*, 92 Ala. 218, 9 South. 276; *L. & N. Ry. Co. v. Allen*, 78 Ala. 494; *L. & N. Co. v. Hall*, 91 Ala. 112, 8 South. 371, 24 Am. St. Rep.

863; *L. & N. Co. v. Hall,* 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84.

(4) Proof is without dispute that the jigger and the block were in good condition, and that they were each of the kind which had been ordinarily used for such work. As said by one witness: "The jigger which was used that day was similar in construction to the jiggers used for that purpose, * * * similar in construction to all other jiggers used before that time, and it was in good condition."

Another witness said: "The same kind of jigger as this had been used for years. * * * I have never seen a jigger with pins through it. I have never found any necessity of the jigger having any such pins."

As heretofore stated, the plaintiff offered no proof to show any improved jigger had ever been devised, patented, or placed on the market, or put in practical use, nor that any jigger had even been tested by the use of a pin; and no proof was offered that a block of wood of greater width could have been used with greater safety and practicability. It is therefore not shown that the jigger and block used on this occassion were not reasonably safe and reasonably adapted to the purposes for which they were used. The evidence bearing upon this question has been carefully considered and we have reached the conclusion that the plaintiff failed to make out a case for submission to the jury under the second count, and that there was error in the refusal of the court to give the peremptory charge for the defendant. We are mindful that some of the above-cited cases (*L. & N. Co. v. Propst, and L. & N. Co. v. Allen*) received some comment by this court in the recent case of *Caldwell-Watson Co. v. Watson,* 183 Ala. 326, 62 South. 859; but the court was there, in this respect, largely speaking to the proposition that in every case

universal usage of the appliance which was inherently defective and insufficient for the purpose for which it was used was not conclusive to the exemption of the employer from all negligence, and what was there said is without any material bearing upon the instant case. Here no inherent defect is shown, and no improved invention or device. There is a mere suggestion of plaintiff that there might be a jigger constructed which might be more safe; but no practical test or use of a better is shown to have ever been made, nor is it shown that the jigger used was not reasonably safe for the purpose for which it was intended.

Count 3 charges negligence to the superintendent as follows: "Said negligence consisted in ordering the men under him to move a set of car trucks with a jigger not sufficient to hold such trucks."

We construe this language as meaning to charge insufficiency to the jigger either as to its strength or size. If this be the proper construction, it is clear that the defendant was also entitled to the affirmative charge as to this count, as the evidence is without dispute that the jigger was strong enough and of sufficient size to hold the car trucks, and that, in fact, a number of such trucks had been moved that morning before the plaintiff's injury, as well as afterwards. The positive evidence as to the strength and sufficiency of the jigger is without any dispute whatever. One witness testified: "This was the first time I had ever seen a jigger slip, with all the experience I had with using trucks. The trucks were not too heavy for the jigger. We had been using them all that morning, and continued to use them after the accident. The jigger did not break down with trucks. It held them up all right."

No better explanation of the accident seems to be found in the record than that given by the witness Mat-

thews when he said: "It was the tipping or tilting of the block that caused the slipping, caused by the sudden jar of the truck upon it. It was nothing more than the sudden rolling or jar of the trucks rolling upon the jigger which caused it to turn."

No negligence charged against the superintendent was shown; and, the alleged defect in the instrument used being unsupported by any tendency of the evidence, there certainly being none that it arose from or had not been discovered or remedied owing to the negligence of the master or employer, or some one in his service intrusted with the duty of seeing that the same was in proper condition, the accident, if it happened as above stated, was merely one of those occurences incident to the employment, and not traceable to any prescribed negligence. In this view of the case it is deemed unnecessary to consider any other question presented.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.