# Standard Steel Co. *v.* Clifton.

## *Injury to Servant.*

(Decided October 14, 1915. Rehearing denied November 18, 1915.
69 South. 937.)

1. *Master and Servant; Injury to Servant; Complaint; Plea.*—
Where the complaint was under the Employer's Liability Act, and
declared on the simple negligence of defendant or its servants,
whereby rock was caused to fall in the mine, inflicting the injury
claimed, special pleas of contributory negligence, based upon a
breach of duty to safely prop the roof of the mine, failure to keep
the roof in good condition, in that slate or loose rock were allowed
to remain therein, and failure to inspect the roof, constituted good
defenses.

2. *Same; Assumption of Risk.*—An employee does not assume extra-
ordinary risks occasioned by the negligence of the employer.

3. *Same.*—Assumption of risk is no defense to an action brought
by an employee under subdivisions 2, 3 and 5, section 3910, Code
1907, caused by the negligence of any person in the employment of
the master, to whose orders or directions the employee at the time
of the injury was bound to conform, or when the injury is caused by
the neglect of any person in the employment of the master who
has charge of any signal points, locomotive, car, or train upon a
railway, or where the negligent person has superintendence entrusted
to him.

4. *Same; Contributory Negligence.*—Contributory negligence is a
good defense to an action brought under the Employer's Liability
Act, and based upon simple negligence, where defendant's pleas
state sufficient facts to show that plaintiff was negligent, and
that such negligence proximately contributed to plaintiff's injury.

5. *Same; Safe Place to Work; Delegable Duty.*—The duty of pro-
viding a safe place in which to work is non-delegable, but the duty
of maintaining a safe place in which to work is delegable; hence, in
an action for damages for injuries caused by the fall of the roof of
the mine, negligence in the maintenance of such roof makes the
master liable, where the duty of maintenance was delegated.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by E. J. Clifton as administrator against the
Standard Steel Company, for damages for the death of
his intestate while employed in defendant's mine. Judg-
ment for plaintiff, and defendant appeals. Affirmed.

HOOD & MURPHREE, and STOKELY, SCRIVNER & DOM-
INICK, for appellant.

W. J. BOYKIN, and J. M. MILLER, for appellee.

MAYFIELD, J.—The action is under the Employers'
Liability Act, to recover damages for the alleged wrong-
ful death of a servant who was engaged in mining iron
ore.

The complaint, as amended, contained 14 counts, num-
bered from 1 to 9, and from A to E, alphabetically.
Demurrers were sustained to counts 8 and 9, and over-
ruled as to the others, but the affirmative charge was
given as to counts A, B, C, and D.

Counts 1 and 2 were based on negligence of master,
as to furnishing a safe place for the servant to work in.
The allegation as to this negligence is as follows: "The
defendant negligently failed to provide said intestate
with a reasonably safe place in which to perform the
duties of his employment."

Counts 3, 5, 6, and 7, each seek to recover under the
second subdivision of the Employers' Act (section 3910
of the Code). Counts 3 and 6 ascribe the negligence to
one Arthur McDaniel, to whom the master had intrust-
ed superintendence, in the sixth count alleged to be
the defendant's mine boss. Counts 5 and 7 ascribe the
negligence to one Pink Minton, who is alleged to have
had superintendence intrusted to him by the master, and
is described as the assistant mine boss. The negligence
alleged in each of these four counts was that the serv-
ant named "negligently caused said slate or rock to fall
upon plaintiff's intestate."

The fourth count declared under the first subdivision
of the statute, as for a defect in the ways, works, etc.,
and the defect alleged was that the roof of the mine at

the place where intestate worked was defective. Count E is under the second subdivision, and is based on the negligence of Pink Minton, assistant mine boss, in the failure to inspect the mine at the place of the injury.

To these 11 counts the defendant pleaded the general issue, and eight special pleas, setting up contributory negligence on the part of the intestate. The specified negligence of plea 2 was a breach of the alleged duty to safely prop the roof of the mine at the place of injury; that of plea 3 was the failure to pull down loose slate or rock from the roof; that of plea 3½ was the failure to keep the roof in good condition, setting out in detail the allowing of slate or loose rock to remain in the roof, which he should have removed. Plea 4 alleged a failure to examine or inspect the roof. Plea 5 was the same as 4, but in addition set out in detail that the accident was the result of the accumulation of loose rock and slate, which fell on account of failure to inspect. Plea 6 set up negligence in removing a jack rock, which allowed the loose rock to fall. Plea 7 set up negligence in removing the support which held the loose rock or slate. Plea 8 alleged the failure to prop the roof, and failure to pull down the loose rock or slate which fell on intestate. Each plea being addressed separately and severally to each count, there were thus presented 99 issues. The court sustained demurrers to some of the counts, and overruled those as to others, and the record therefore presents an arithmetical puzzle of some difficulty, in the task to determine the number, as well as the preciseness or certainty, of the issues upon which the case was really tried.

The judgment entry as to the ruling on the demurrers to the pleas is as follows: "On this the 3d day of November, 1914, come the parties by attorneys, and the

plaintiff demurs to the defendant's pleas upon the grounds specifically set forth in said demurrer, and upon due consideration it is ordered and adjudged by the court that said demurrer to pleas 3 and 4, to counts 3, 4, 5, 6, 7, be and the same is hereby overruled, and demurrer to pleas 6, 7, 8, to counts 3, 5, 6, 7, 8, be and the same is hereby overruled;; and the said demurrer to pleas 2, 3, 3½ and 5, to counts 1, 9, be and the same is hereby overruled, and the said demurrers to the remaining pleas to other counts of the complaint be and the same is hereby sustained."

There are 55 assignments of error. We will, however, treat only those which are sufficiently insisted upon in brief. The assignments of error as to rulings on demurrer to the complaint are not sufficiently insisted upon to merit consideration further than we will indicate. In the fullest brief of appellant no reference is made to the ruling on the demurrer to the complaint. In the other brief the ruling is stated as one of the questions for decision, but there is no argument, further than a restatement of the assignments of error, and no particular defect is pointed out further than those in counts declaring under the second subdivision, and as to those the insistence is without merit, as the counts practically follow those often held good by this court. Some of the grounds of demurrer to these counts were speaking demurrers; and the counts did in fact contain the allegations of superintendence, and that the negligence occurred whilst the servant was in the exercise of such superintendence.

As to the ruling on the demurrer to the pleas, as above stated, it is difficult to say whether or not there was error, and more difficult to say whether or not the record shows that injury resulted to appellant from such

ruling. The difficulty arises because each of the pleas was held good as to some of the counts, and bad as to others, some of the different counts state the same cause of action, but in varying language or phraseology, and some of the pleas set up the same defense but in varying phraseology. It is certain that the defendant had the opportunity of proving every one of its pleas to one or more of the counts, but it was not allowed to prove any one of these special pleas to all of the counts. The verdict being general as to all the counts, it is impossible for us to know on which of the counts the jury found for the plaintiff, further than we have stated above. We have endeavored to work out this puzzle of pleadings, to see if we could find that the ruling was without injury, if erroneous, and thus avoid considering the sufficiency of the pleas as to which demurrers were sustained; but we have been unable to do so, and we will therefore have to treat the sufficiency of these pleas.

(1) Pleas 2, 3½, and 5 were held insufficient as to all counts except 1 and 2, which declared on the common-law liability, for failure of the master to provide a reasonably safe place in which the servant was to perform his duties. If the pleas were good defenses as to these counts—and they seem to be—we see no reason why they were not good to those counts which sought to recover under the second subdivision of the statute, on account of the negligence of servants who were intrusted with superintendence. The pleas could not be good defenses to counts 1 and 2, unless they alleged facts to show that intestate was guilty of negligence which proximately resulted in his injury or death. That is, the pleas must show that the negligence of intestate, alleged in the pleas, concurred with that of the master alleged in the counts, to produce the injury complained of; and this, the pleas unqestionably do. If the facts

stated in these pleas 2, 3½, and 5 were true—and on demurrer they must be so treated—they were each good answers to any one of the counts, each count, as it does, declaring on simple negligence only of the master, or of his servant, under the statute. If the pleas had been pleas of assumption of risk, rather than pleas of contributory negligence, then the ruling of the court would have been correct, because assumption of risk is no defense to a cause of action stated under the second, third, or fifth subdivisions of the statute, for the reason that to allow such pleas would be to nullify the statute as to those subdivisions.

(2) An employee does not assume an extraordinary risk caused by the employer's negligence.—*Louisville & N. R. Co. v. Handley,* 174 Ala. 593, 56 South. 539.

(3) It has been repeatedly held that an assumption of risk is no defense to an action brought by an employee under the second, third, and fifth clauses of section 3910 of the Code of 1907. Said the court in *Woodward v. Andrews,* 114 Ala. 243, 21 South. 440: "To sustain it would be to emasculate the employer's liability act in respect to its second, third, and fifth clauses, and to rehabilitate the common-law doctrine of fellow servants as applicable to the cases provided for in those clauses, when the clear purpose of the act is to destroy the defense of assumption of risk by the injured employee in the several cases stated in the counts referred to. An employee in such cases may be guilty of such contributory negligence as will bar his recovery, but he does not assume the risk incident to the negligence of the superintendent, or of a person to whose orders he was bound to conform, and did conform, or of a person in charge and control of a locomotive engine, car, etc.—Reno's Empl. Liab. Act, 190."

The case of *Briggs v. Tenn. Co.,* 163 Ala. 237, 50 South. 1025, is overruled, so far as it holds that an assumption of risk is a good defense as against the negligence made actionable under subdivisions 2, 3, and 5 of the Employers' Liability Act. Each count in the case of *Sou. C. O. Co. v. Walker,* 164 Ala. 33, 51 South. 169, was framed under subdivision 1 of section 3910 of the Code, charging a defect in the ways and works, and the quotation from section 438 of Labatt may have been apt as to the case there considered, but said quotation must not be considered as approving or applying the doctrine to subdivisions 2, 3, and 5 of section 3910.— *L. & N. R. R. Co. v. Handley,* 174 Ala. 593, 603, 56 South. 539.

(4) The rule is different, however, as to pleas of contributory negligence. If these pleas state facts sufficient to show that the plaintiff was negligent, and that this negligence set up in the plea proximately contributed to the injury complained of, then the plea is a good defense to simple negligence under any subdivision of the act or at common law. The effect of our statute (section 3910), as the statute declares, is to make "the master or employer liable to answer in damages to such servant or employee, as if he were a stranger, and not engaged in such service or employment," in the case mentioned in the five subdivisions of the statute. Therefore, if the intestate had been a stranger, and had been guilty of contributory negligence which proximately contributed to his injury, this would have been a defense to the action stated in any one of the several counts. The object and effect of the statute was well stated in *Holborn's Case,* 84 Ala. 133, 4 South. 146, where it was said: "The primary and general purpose of the statute is to abolish, in the specified cases, the

rule which exempted employers from liability to answer in damages for an injury suffered by the negligence of a co-employee. When the employee who is injured and the employee whose negligence causes the injury are of the same grade, and as to all employees, who do not come within either of the specified classes, the common-law rules still apply.—*Griffiths v. Earl of Dudley,* 9 Q. B. Div. 357. The statute gives the employee a right of action in the enumerated cases as if he were one of the public suing, not a passenger, but rightfully and lawfully on the premises of the emyloyer, and takes away the defense of common employment, which he previously had. * * * The purpose of the statute is to protect the employee against the special defenses growing out of, and incidental to, the relation of employer and employee; and the result is to take from the employer such special defenses, but to leave him all the defenses which he has by the common law against one of the public, not a trespasser, nor a bare licensee. Under the statute the defense of comtributory negligence is open to the employer.—*Weblin v. Ballard,* 17 Q. B. Div., 122."

What we have said as to pleas 2, 3½, and 5 is true as to the other pleas. If good as to any one of the counts, we can see no reason why they were each not good as to all which declared on simple negligence only. We find no averment in any count or plea which makes one of the pleas particularly applicable to one or more counts and not applicable to all. We do not mean to hold that a plea of contributory negligence may be good to one count and not to another, but are speaking only to the case in hand. For example, a plea of contributory negligence might be good to one count and bad to another, because as to such other count it is merely the general issue.

As above stated, if the pleas had been of assumption of risk, rather than of contributory negligence, there would be more than one reason for the distinction made by the trial court; but, as they were clearly pleas of contributory negligence, the distinction does not exist. It can make no difference that the injury resulted in death, because under the statute, the personal representative is given only such right of action as the servant would have had if death had not resulted, save as to the measure of damages, which, of necessity, is different.— Code, § 3912, and cases cited thereunder. It therefore follows that the trial court erred in sustaining demurrers to the special pleas, as above pointed out.

It is unnecessary to treat specially each ruling as to charges, but it is sufficient to say that we have examined them and find them free from error as applied to the trial of this case. The law was certainly charged as clearly and as favorably for the defendant as it had a right to have it charged, except as we will later point out. There was likewise no error in the rulings as to evidence.

(5) As another trial may be had, we call attention only to the fact that we find in this record no evidence to support the cause of action alleged in the first two counts, declaring on the duty to furnish a safe place. This record shows that whatever unsafety there was, for which the master is liable, was as to maintenance, and not as to providing, as for which these counts declare. The former is a delegable duty, while the latter is not. The only negligence which appears in this record, and apparently the only negligence attempted to be shown, was the failure to inspect the roof of the room in which intestate was injured, or the failure to securely prop the same or to remove the loose rock or slate

which fell upon intestate. This, if considered a defect, was one which arose in the progress of the work; there could be no roof until the ore was removed, and it could not be inspected, nor propped, nor the loose rock removed, until ore was removed. To maintain this kind of safety is a delegable duty, and the proof shows that it was delegated in this instance; and, if negligence occurs in the maintenance, it is that of the master's servant, or agent, but for such the statute alone makes the master liable. The real dispute in this case was whether this duty was on the intestate—as for which, of course, the master would not be liable—or whether the duty was on other servants of the master, as for whose negligence the statute does make the master liable. There is in fact no evidence to show negligence on the part of the master itself, but only that of some servant or agent, as to matters which are delegable, and which all the evidence shows were delegated. The rule is thus stated by Mr. Labatt: "Except in the cases in which the master is himself directing the work in hand, his obligation to protect his servants does not extend to protecting them from the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work. In other words the rule that the master is bound to see that the environment in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employees. It is obvious that this is merely an alternative way of stating the effect of the doctrines of contributory negligence and common employment."—Master & Servant, vol. 1, § 11, p. 14.

The rule is thus stated by the Supreme Court of the United States in the case of *Armour v. Hahn,* 111 U. S. 318, 4 Sup. Ct. 434, 28 L. Ed. 440: "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows."

The safety or unsafety of the roof of a room of a mine, of necessity, occurs during the operation of the mine and in the course of the duties of those employed. There can be no roof to such a room until the ore or coal is removed, and it cannot be propped, nor known to be safe or unsafe, until the removal takes place; consequently it is a necessary part of the operation, rather than a part of the original construction of the place, or of the supplying of the instrumentalities. It must be formed by one of the master's servants or agents. The master may be liable therefor, but it is for failure to maintain, and not for failure to furnish, a safe place. There is no allegation in the first two counts as for failure to maintain or to repair, but the allegations are solely as for negligence on the part of the master itself in its failure to furnish a reasonably safe place.

For these errors the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.