(76 South. 446)

MUNSON S. S. LINE v. HARRISON.
(1 Div. 957.)
(Supreme Court of Alabama.   June 21, 1917.)

1. EXCEPTIONS, BILL OF ⬅️32(1)—SETTLING —STATUTE—ABSENCE OF JUDGE.

Bill of exceptions filed with clerk of trial court on next to last day for filing because trial judge was out of county and counsel for appellant did not know when he would return may, under Code 1907, § 3022, as amended by Acts 1915, pp. 816–817, be settled and signed before judge of Supreme Court, though trial judge returned day after filing, and was not thereafter in any way incapacitated to transact duties of office.

2. EXCEPTIONS, BILL OF ⬅️32(1)—SETTLING— STATUTE—ABSENCE OF JUDGE.

Under Code 1907, § 3022, as amended by Acts 1915, pp. 816–817, mere fact that it is possible to have bill of exceptions settled and signed by trial judge does not prevent party from having this done by judge of Supreme Court, if facts are shown to exist authorizing such judge to take this action.

3. EXCEPTIONS, BILL OF ⬅️32(1)—SETTLING— STATUTE—ABSENCE OF JUDGE.

If a litigant desiring to present bill of exceptions cannot find trial judge because of his absence from county, and cannot ascertain when he will return, he may, under Code 1907, § 3022, as amended by Acts 1915, pp. 816–817, apply to member of Supreme Court to sign and settle bill without waiting for his return until last day on which bill can be presented.

4. EXCEPTIONS, BILL OF ⬅️32(1)—SETTLING— STATUTE—ABSENCE OF JUDGE.

Under Code 1907, § 3022, as amended by Acts 1915, pp. 816–817, a party cannot apply to member of Supreme Court to settle bill of exceptions, where he could have found trial judge by exercise of due care and diligence.

5. MASTER AND SERVANT ⬅️293(8)—INJURIES TO SERVANT — ACTIONS — DECLARATION — MASTER'S DUTY.

In action to recover damages for wrongful death of employé, allegation that it was defendant's duty to use reasonable care to furnish proper lights for the work of decedent, and that he negligently failed to do so, does not charge duty to furnish safe place or to properly light premises to be absolute.

6. MASTER AND SERVANT ⬅️279(3)—INJURIES TO SERVANT — ACTIONS — DECLARATION — DANGEROUS PLACE.

Allegation of master's failure to use reasonable care to provide safe place or to properly light premises is not proven by evidence of negligence of servant in not keeping place safe or lights burning; there being no evidence to show negligence on part of master in retaining such servant in his employ.

7. MASTER AND SERVANT ⬅️264(4)—INJURIES TO SERVANT—ACTIONS—STATUTE—PLEADING AND PROOF.

In action to recover damages for wrongful death of employé plaintiff cannot, under allegation that it was caused by breach of common-law duty to provide safe place to work, prove that it was due to breach of duty under Employers' Liability Act to maintain safe place.

8. MASTER AND SERVANT ⬅️233(4)—INJURIES, TO SERVANT—CONTRIBUTORY NEGLIGENCE.

There can be no recovery for death of employé due to injuries received while walking on a pile of lumber which it was his duty to stack, where he stacked it negligently and walked on it knowing its condition and attendant dangers.

9. MASTER AND SERVANT ⬅️233(4)—INJURIES TO SERVANT—ASSUMPTION OF RISK—NATURE AND EXTENT.

An employé cannot create or consent to the creation of a defect and hold the master answerable in damages for any injuries caused thereby.

10. MASTER AND SERVANT ⬅️235(4)—INJURIES TO SERVANT—FELLOW SERVANT.

An employé has no right to presume that his fellow employé will do his duty.

11. MASTER AND SERVANT ⬅️226(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant assumes all the risk of the service in which he voluntarily engages, except such as arises from negligence on the part of the master.

12. MASTER AND SERVANT ⬅️265(14)—INJURIES TO SERVANT—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

While contributory negligence is purely matter of defense and must be pleaded and proven by defendant, yet if plaintiff's evidence shows that his own negligence proximately contributed to the injuries complained of, defendant is relieved of this burden.

Appeal from Law and Equity Court, Mobile County;  Saffold Berney, Judge.

Action by Eugenia Harrison, as administratrix, against the Munson Steamship Line, for damages for the death of her intestate while in the employment of defendant.  Judgment for plaintiff, and defendant appeals.  Reversed and remanded.

The cause was submitted on motion to strike the bill of exceptions, and the following is the agreed statement of facts:

It is hereby agreed between the respective attorneys of record for the parties in the matter of the motion by appellant to establish a bill of exceptions in said cause before Hon. William H. Thomas, associate justice of the Supreme Court of Alabama, that the following facts are true:  That said cause was tried in the law and equity court of Mobile on June 23, 1916, and judgment therein rendered on said date; that Hon. Saffold Berney, judge of the law and equity court of Mobile, was the judge before and by whom the said cause was tried, and that said judge after the trial of said cause remained in the city of Mobile continuously from and after the date of the trial of said cause until some time in the early part of September, 1916; that during the month of September, 1916, said judge left the city of Mobile upon a trip to Nashville, Tenn., and remained away from the county of Mobile and state of Alabama for the period of about ten days; that early in the morning of September 21, 1916, said judge re-

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

turned to the city of Mobile, and that on said day he was not in any way incapacitated from performing the duties of his office; that since said 21st day of September Judge Berney has, remained continuously in the city of Mobile, and has not been in any way incapacitated to transact the duties of his office; that on the 20th day of September, 1916, counsel for appellant filed with Sextus H. Smith, clerk of said trial court, the bill of exceptions now sought to be established in the above-entitled cause; that upon the said day when said bill of exceptions was so presented to the clerk the judge of said court was absent from the city and county of Mobile; that, when the said bill was so presented to said clerk, counsel for appellant had no notice or knowledge as to when said judge would return to Mobile; that the official court reporter who took down the testimony in said cause was William J. Goodman; and that said Goodman prepared the transcript now offered in evidence before Judge Thomas of the Supreme Court of Alabama, and that said transcript is a true record of the proceedings and evidence in said cause, but that the counsel executing this agreement reserve the right to cure and correct any clerical misprisions which may develop in connection with the motion to establish such bill of exceptions.

In witness whereof we have hereunto set our hands this 2d day of January, 1917, and that the bill of exceptions in this cause was presented to Judge Thomas December 14, 1916.

Lyons & Courtney, of Mobile, for appellant. Alex Howard, of Mobile, for appellee.

### On the Motion to Strike the Bill of Exceptions.

MAYFIELD, J. [1-3] We are of the opinion that the bill of exceptions should not be stricken in this case. The facts agreed to show a right to have the bill established by a member of this court, as provided by section 3022 of the Code, as amended by the act of the Legislature of 1915 (Acts 1915, pp. 816–817). The mere fact that it is possible to have the bill settled and signed by the trial judge does not prevent the party from having the bill settled and signed by a member of this court, if the facts are shown to exist authorizing a judge of this court to take such action. If a litigant desirous to present to the trial judge a bill of exceptions cannot, by the exercise of reasonable diligence, find that official, because of his absence from the city or county in which he would be found but for absence, and the litigant does not know, or with reasonable diligence cannot ascertain, when the judge will return so that he may present his bill of exceptions, he is not required to wait for the return of such absent judge until the last possible day during which he can present his bill before applying to a member of this court to settle and sign his bill.

[4] On the other hand, it was never intended by the statute as amended that a party may apply to a member of this court, or to the court, to settle and establish a bill of exceptions merely because he did not find the trial judge when or where, at his discretion, he looked for him, and when, with due care and diligence, he could have found the trial trial judge at his usual known place of business, or at his residence, or at some other place where his duties might reasonably require him to be. It was obviously not the intent of the statute to give the party the option of applying either to the trial judge, or to a member of this court, to settle and sign his bill of exceptions, but only to give him the right to apply to a member of this court when the facts exist, and are shown, which the statute mentions, as conferring the right. And we think such facts were shown in this case.

The reporter will set out the facts as agreed upon, touching the presentation of this bill to a judge of this court.

### On the Merits.

The action is against the master or employer to recover damages for the wrongful death of the servant or employé. Some of the counts ascribe the wrongful death alleged to breaches of the common-law duties of the master to provide the servant a reasonably safe place in which to work, and to use reasonable diligence to properly light the premises wherein the servant is required to perform his services. Other counts charge negligence to a superintendent, under the second subdivision of the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]). The defendant interposed a number of special pleas of contributory negligence and assumption of risk on the part of the deceased. The trial resulted in verdict and judgment for the plaintiff, and the defendant appeals.

[5] There is no merit in the contention that the counts declaring on the common-law duties were defective, in that they imposed a higher degree of care, prudence, and responsibility on the master than the law imposed; that is to say, that they made the duty of the master to furnish a safe place in which to work, and to provide a light, an absolute duty, with the result to constitute the master an insurer of the servant in these particulars, whereas the master is responsible merely to exercise reasonable diligence, under all the circumstances, to provide a reasonably safe place wherein his servant may work, and sufficiently light the premises' wherein his servant is required to work at night. Neither of the counts was subject to the objections held to be well taken in the Merriweather Case, 161 Ala. 441, 49 South. 916, or in Huyck's Case, 163 Ala. 244, 50 South. 926, or in Triplett's Case, 177 Ala. 258, 58 South. 108. The counts in question are nearer like the counts considered in Stewart's Case, 172 Ala. 516, 55 South. 785. The counts in question do not allege an absolute duty on the part of the defendant to provide a safe place or to properly light the premises, but only the duty to exercise reasonable care and diligence to provide a safe place or proper lights. It is true that this duty is not so

stated or charged in terms, but it is so stated in legal effect, the allegation being:

"It was then and there the duty of the defendant to use reasonable care to furnish proper lights for the performance of said work, and plaintiff avers that the defendant negligently failed to provide such proper lights."

This is quite different from the allegation in the Merriweather Case, which in effect charged the duty to be absolute to furnish a safe place, and not merely to use reasonable care to provide a safe place.

[6] This cause must be reversed, however, because of the failure of the proof to establish the material allegations of these counts which charged a breach of the common-law duty of the master. If there be any evidence to show negligence that would support a recovery, it is of negligence in the failure to maintain a safe place or to properly light and keep lights burning, and not evidence of negligence in the failure to originally provide a safe place or to install a proper system of lights. The negligence alleged was that of the master himself, his failure to use reasonable care to provide a safe place or to properly light the premises; while the only tendency of the evidence was to show negligence of some agent or servant of the defendant in not keeping the place or plant safe, or not keeping the lights burning. But there was no evidence to show negligence on the part of the master in employing or retaining in his service such agent. Under the law of this state, which is well established, the duty to originally provide a safe place and a light or system of lights to illuminate the premises is a duty which the master cannot delegate to his agent or servant; whereas the duty of maintaining the reasonably safe condition and the lights is delegable. L. & N. R. R. Co. v. Andrews, 171 Ala. 200, 54 South. 553; Standard Co. v. Clifton, 194 Ala. 300, 69 South. 937. The rules of law in such cases are thus stated, and the authorities cited, in Clifton's Case, supra:

"This record shows that whatever unsafety there was for which the master is liable was as to maintenance, and not as to providing, as for which these counts declare. The former is a delegable duty, while the latter is not. * * * The rule is thus stated by Mr. Labatt: 'Except in the cases in which the master is himself directing the work in hand, his obligation to protect his servants does not extend to protecting them from the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work. In other words, the rule that the master is bound to see that the environment in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employés. It is obvious that this is merely an alternative way of stating the effect of the doctrines of contributory negligence and common employment.' Master & Servant, vol. 1, § 11, p. 14.

"The rule is thus stated by the Supreme Court of the United States in the case of Armour v. Hahn, 111 U. S. 318, 4 Sup. Ct. 434, 28 L. Ed. 440: 'The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building which they are employed in erecting in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows.'"

[7] It is very true that our Employers' Liability Act does take away from the master his defense of the fellow-servant doctrine, as to some of the cases of maintaining a safe place, but in such instances the case must be made under the statute; it is not sufficient to allege a cause under the common-law duty and prove one under the statute. This is not allowable; the allegation and the proof must correspond in this respect.

[8] The defendant was also entitled to the affirmative charge on some of the pleas of contributory negligence on the part of the deceased. These pleas were proven without dispute. Some of these pleas alleged that deceased knew of the unsafe condition of a pile of lumber, that it was so piled or "stowed" as to be insecure and unsafe, and that on this account it was dangerous to walk upon it, and that, with this knowledge of the condition and of the danger, he nevertheless walked upon it, thereby causing it to fall, and that as a proximate consequence of his own negligence in this respect he suffered the injuries of which complaint is here made. Others alleged that the deceased was warned by the defendant's foreman of the condition of the pile of lumber and of the danger attending it, but that, notwithstanding such warning, deceased failed to conform to caution, and in consequence met his death. Other pleas alleged that the deceased was guilty of negligence which proximately contributed to his death, in that, being charged with the duty of stacking or "stowing" a pile of lumber, he so negligently performed such duty that the lumber fell upon him and killed him.

While there is some dispute in the evidence as to mere details, there is none as to the material averments of some of these pleas; that is, they were proven by the plaintiff's own witnesses, and there is nothing to the contrary. For example, one of the plaintiff's witnesses, the one who was present and was working with deceased when the latter met his death, says:

"The day crew had already worked the lumber that he and Harrison were working on, and they had also stowed this lumber, but had not properly stowed it when he and Harrison started in where the day gang left off; that one of the duties of the side carrier is to see that the lumber is properly stowed, and it is a side carrier's duty to go over the load and inspect it, and, if it is not right, to stow it right, and that is how come the side carrier to have a job, and that's what Jim Harrison was doing; that he was stowing lumber that they knew was not stowed right and were fixing those places; that they knew the lumber was not right, and were sent there to fix it; that three pieces of lumber fell with Harrison crossways the deck, and they swung around and threw him overboard."

Another witness for plaintiff testified:

"That it is the duty of the side carrier to properly have the lumber stowed right and to

see that the other men stow it right; that he did not see the stanchion on the deck when he went aboard the ship; that he does not know how long Munson Steamship Line had been loading that particular boat, but that that was the first night they worked on that ship; that they could see that the lumber was not stowed right; that they could see it without anybody telling them; that they had no trouble to see that the lumber was not stowed right; that they could tell that it was liable to fall if they worked on it because it was not properly stowed, and you step on it it will rear up and overbalance."

"That he could tell the lumber was not safe; that it was ragged: that he could see good enough with these lights at the time to tell whether or not the lumber was safe."

While there may be a conflict as to whether or not there was sufficient light on the ship at the very time of the injury, yet, if there was not enough, it was shown not to be due to negligence of the defendant as alleged, but to that of some other agent or agency. So there was an utter failure to prove the count as to the lights, as alleged.

As to the count as for negligence in stacking or stowing the pile of lumber, the evidence without dispute showed that deceased himself was guilty of negligence as to this, and negligence which was set up in special pleas, which would defeat a recovery under any count declaring on such negligence in stowing or piling such lumber. As to this, it appears beyond doubt that deceased proximately contributed to his own death by his negligence in stowing the lumber; that with full knowledge of the condition of the pile of lumber, and of the danger attending it, he voluntarily assumed the risk of walking on it in such manner as to cause his own death.

[9] An employé cannot create or consent to the creation of a defect and hold the master answerable in damages for any injury caused thereby. In such case he voluntarily assumes the risk of the peril. "Volenti non fit injuria." H. A. & B. R. Co. v. Walters, 91 Ala. 435, 8 South. 357.

[10] One employé has no more right to presume that another employé will do his duty than such other employé has the right to presume that he will perform his duty; and where both are guilty of negligence, which contributed to their own injury, in such cases neither can recover. A. G. S. R. R. Co. v. Roach, 110 Ala. 266, 20 South. 132.

[11] The servant assumes all the risk of the service in which he voluntarily engages, except such as arises from negligence on the part of the master. Risks of the service shall not be increased or caused by the master's negligence, but risks not increased or caused by the master's negligence are risks of the service which the servant assumes. The question is not danger, but negligence on the part of the servant or master. Postal Co. v. Hulsey, 132 Ala. 459, 31 South. 527; L. & N. R. R. Co. v. Stutts, 105 Ala. 368, 17 South. 29, 53 Am. St. Rep. 127.

[12] While contributory negligence is purely defensive matter, and must be pleaded and proven by the defendant, yet, if the plaintiff's evidence affirmatively and conclusively shows that his own negligence proximately contributed to the injuries complained of, the defendant is relieved of this burden. Louisville & N. R. Co. v. Williams, 172 Ala. 560, 55 South. 218.

It results that the judgment of the lower court must be reversed, and the cause remanded for another trial, as we cannot presume the evidence will be the same on the next trial.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.